Petitioner: Robert M. FRIEDLAND,

v.

Respondent: The TRAVELERS INDEMNITY COMPANY, a Connecticut corporation.

No. 03SC681.

Supreme Court of Colorado, En Banc.

Jan. 31, 2005.

further proceedings consistent with this opinion.

Fognani Guibord & Homsy, LLP, John D. Fognani, R. Kirk Mueller, Suzanna K. Moran, Denver, for Petitioner.

Ballard Spahr Andrews & Ingersoll, LLP, Kevin Michael Shea, Leslie A. Eaton, Jon Bernhardt, Denver, for Respondent.

Roberts Levin & Patterson, P.C., Bradley A. Levin, Laura E. Schwartz, Denver, for Amicus Curiae The Colorado Trial Lawyers Association.

White & Steele, P.C., Sandra L. Spencer, Denver, for Amicus Curiae Complex Insurance Claims, Litigation Association.

Robert W. Smith, Denver, for Amici Curiae London Market Insurers.

HOBBS, J.

We issued a writ of certiorari pursuant to C.A.R. 50 to review the trial court's grant of summary judgment for defendant, the Travelers Indemnity Company (Travelers), and to determine whether the notice-prejudice rule announced in *Clementi v. Nationwide Mutual Fire Insurance Co.,* 16 P.3d 223 (Colo. 2001) applies to liability policies.[1] Although we adopt the notice-prejudice rule for liability policies, in the case before us the insured gave notice of claim and suit to the insurer after the insured had defended and settled the case. In such a circumstance, the delay is unreasonable as a matter of law and the insurer is presumed to have been prejudiced by the delay. However, the insured must have an opportunity to rebut the presumption of prejudice; thus, we reverse the trial court's grant of summary judgment in favor of the insurer here and remand the case for

## I.

In the trial court, plaintiff Robert M. Friedland, sought compensation from defendant, Travelers, for the defense and indemnification costs he incurred in connection with an environmental lawsuit brought against him by the United States and the State of Colorado under the federal Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. sections 9604 and 9606 (CERCLA). That suit arose out of pollution caused by a mining operation in Conejos County, Colorado.

Summitville Consolidated Mining Company, Inc. (SCMCI) operated a gold mine and cyanide heap leach facility in the San Juan Mountains south of Del Norte. In April of 1984, Friedland became an officer and director of SCMCI. He resigned this position in January of 1987.

In December, 1992, SCMCI declared bankruptcy. That same month, the Environmental Protection Agency took over management of the site, seized the corporate documents and records located there, and began response actions pursuant to CERCLA, to protect against further environmental degradation.

In May, 1996, the United States and the State of Colorado filed suit against Friedland and other parties seeking recovery under CERCLA of response, investigation, remediation and other costs incurred at the site. *See United States v. Friedland,* 173 F.Supp.2d 1077 (D.Colo.2001). Friedland defended the lawsuit. After approximately four years of litigation, he settled the claims against him by paying twenty million dollars

---

1. We granted a writ of certiorari on the following issues:
 1. Whether the traditional late notice rule announced in *Marez v. Dairyland Ins. Co.,* 638 P.2d 286 (Colo.1981) (*"Marez"*) should be overruled with respect to liability insurance policies.
 2. Whether the District Court erred in characterizing the instant case as a "no notice" case, rather than a "late notice" case, because notice was given after the underlying litigation was settled.

3. Whether the District Court erred in concluding, as a matter of law, that untimely notice barred Mr. Friedland's claim despite the presence of disputed material facts regarding the reasonableness of, and justification for, the timing of the notice.
4. Whether the District Court erred in denying coverage even for defense costs incurred before the date that the Court determined that Mr. Friedland first had access to the Travelers policies and could have given notice.

to the United States and the State of Colorado.

During its viability, SCMCI had obtained comprehensive general liability insurance policies from Travelers. These policies were marked on their face "Comprehensive General Liability Form." They provided coverage for bodily injury, property damage, and medical payments to third parties resulting from accidents or occurrences for which the insured was legally obligated. These were not policies specifically negotiated and designed by the parties to address particular circumstances such as CERCLA liability.

Friedland contends that these policies provide him coverage as an additional insured for defense costs and liability payments in connection with the CERCLA case. He also asserts that he had no specific knowledge of this coverage until after he had defended and settled the CERCLA action against him. The trial court did not actually decide whether the policies provided coverage for the environmental contamination costs and damages caused by the Summitville operation. Instead, in dismissing Friedland's claims against Travelers, the trial court found that Friedland did not provide notice of the CERCLA lawsuit to Travelers until more than six years after that action had been filed and approximately six months after he had incurred attorneys' fees in defense of those claims and settled the CERCLA action against him.

Friedland brought suit against Travelers for the defense costs and liability payments allegedly owed under the policy as reimbursement of his expenses incurred in defending and settling the CERCLA suit. He asserted claims for declaratory judgment, anticipatory breach of contract, and breach of contract, based on two insurance policies Travelers issued to SCMCI in 1984 and 1985 that included him as an additional insured person.

Travelers filed a motion for summary judgment, alleging under the terms of the policies, that (1) Friedland's failure to provide notice of claim and notice of suit until after the settlement precluded his recovery under the policies, (2) recovery of amounts Friedland paid in settlement were barred by the

"no voluntary payment" provisions of the policies, and (3) under the applicable law, Friedland could not recover for pre-notice defense costs.

The applicable provisions of the liability policies state as follows:

**INSURED'S DUTIES IN THE EVENT OF OCCURRENCE, CLAIM OR SUIT**

1. In the event of an **occurrence,** written notice containing particulars sufficient to identify the **Insured** and also reasonably obtainable information with respect to the time, place and circumstances of the **occurrence,** and the names and addresses of the injured and of available witnesses, shall be given by or for the **Insured** to the Company or any of its authorized agents as soon as practicable.

2. If claim is made or suit is brought against the **Insured,** the **Insured** shall immediately forward to the Company every demand, notice, summons or other process received by the **Insured** or the **Insured's** representative.

3. The **Insured** shall cooperate with the Company and, upon the Company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the **Insured** because of injury or damage with respect to which insurance is afforded under this Section; and the **Insured** shall attend hearings and trials and assist in securing and giving evidence and obtain the attendance of witnesses. The **Insured** shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of the accident.

(emphasis in original).

Applying our decision in *Marez v. Dairyland Ins. Co.,* 638 P.2d 286 (Colo.1981), the trial court granted summary judgment in favor of Travelers. It determined that Friedland's claims against Travelers were not recoverable because of the insured's material breach of the policies' notice provisions. The trial court did not consider whether

Travelers had been prejudiced by Friedland's failure to give timely notice.

Having disposed of the case on summary judgment because of unreasonably late notice, the trial court did not address the other issues Travelers raised in its summary judgment motion.

## II.

In this case, we apply the notice-prejudice rule to liability policies. In doing so, we overrule *Marez* to the extent it applies to late-notice liability cases. However, in the case before us, Friedland gave notice of claim and suit only after he defended and settled the case. In such a circumstance, we conclude that the delay is unreasonable as a matter of law and the insurer is presumed to have been prejudiced by the delay. However, the insured must have an opportunity to rebut the presumption of prejudice; thus, we reverse the trial court's grant of summary judgment in favor of the insurer here.

### A. Standard of Review

We review de novo the trial court's grant of summary judgment under C.R.C.P. 56. *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 71 (Colo.2004). A motion for summary judgment should be granted only when there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. C.R.C.P. 56; *Clementi*, 16 P.3d at 225. In determining whether summary judgment is proper, the nonmoving party is entitled to any favorable inferences that may reasonably be drawn from the facts, and all doubts must be resolved against the moving party. *Bebo Constr. Co. v. Mattox & O'Brien, P.C.*, 990 P.2d 78, 83 (Colo.1999).

### B. Notice–Prejudice Rule

Most insurance policies require the insured to provide the insurer with prompt notice of a claim at or about the time that the claim arises or becomes known to the insured, or within a reasonable period of time thereafter. Further, most policies require the insured to notify the insurer promptly when the insured is served process in a legal proceeding. Most policies also contain a requirement for the insured to cooperate reasonably with the insurer in the investigation and defense of the claim. *See* David P. Hersh, *The Requirement for a Showing of Prejudice in Cases of Late Notice of Claim*, 30 Colo. Law. 83, 83 (May 2001).

When late notice occurred, our jurisprudence under *Marez* and similar cases traditionally enforced the standard notice of claim or suit provision by discharging the insurer's obligation to defend against the suit and pay any judgments covered under the policy. By the time of our *Clementi* decision, an ever-growing majority of jurisdictions had adopted the notice-prejudice rule, whereby late notice does not result in loss of coverage benefits unless the insurer proves prejudice to its interests by a preponderance of the evidence. *See* 13 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance*, § 193:49 at 194–60 (3d ed. 1999 & Supp.2004); *see also* Charles C. Marvel, LL.B., Annotation, *Modern Status of Rules Requiring Liability Insurer to Show Prejudice to Escape Liability Because of Insured's Failure or Delay in Giving Notice of Accident or Claim or in Forwarding Suit Papers*, 32 A.L.R.4th 141 (1984).

Addressing an uninsured motorist (UIM) policy in *Clementi*, we adopted a two-step approach to trial court implementation of the notice-prejudice rule. This approach requires a preliminary determination of whether an insured's notice was timely. Such a determination should include an evaluation of the timing of the notice and the reasonableness of any delay. Once a court has determined that an insured's notice was untimely and that the delay was unreasonable, it should then turn to the issue of whether the insured was prejudiced by such untimely notice. *Clementi*, 16 P.3d at 231.

In *Clementi*, we concluded that the insurer has the burden of demonstrating by a preponderance of the evidence that its significant interests were prejudiced by the delayed notice. *Id.* at 232. These significant interests include the opportunity to investigate or defend the insured's claim and to receive the insured's cooperation in the process of gathering information, negotiating settlements, securing and giving evidence,

attending hearings and trials, and assisting witnesses to attend hearings and trials. *See id.; State Farm Mut. Auto. Ins. Co. v. Brekke,* No. 03SC585, 105 P.3d at 188 – 189 (Colo. as modified Jan. 31, 2005).

We rejected the notion that the insured must, at a minimum, put on evidence of the reason for not complying with the insurer's notice requirement. We found such approach problematic because insurer prejudice is not relevant to the reasonableness of the insured's delayed notice. *Clementi,* 16 P.3d at 231. Instead, we established the standard that, if the insured has unreasonably provided delayed notice to an insurer, the insurer may deny coverage benefits only if it can prove by a preponderance of the evidence that it was prejudiced by the delay. *Id.* at 232.

Under the *Clementi* facts, we upheld the trial court's determination that the notice the insured gave to the contesting insurer—five months after the latest date on which the insured should have reasonably done so—was untimely and unreasonable as a matter of law. We then proceeded to the prejudice issue. Because the trial court had applied the *Marez* line of cases, it had not heard and considered evidence relating to whether the delayed notice had prejudiced the insurance company. In remanding the case for a trial court determination on the prejudice issue, we observed that the insurer had the opportunity to investigate the accident several months prior to the insured's settlement with another carrier and that other entities had made accident investigations. Nevertheless, the record contained no detailed evidence concerning whether the other investigations were adequate to protect the insurer's rights under the policy. We therefore remanded the case for further proceedings on the issue of prejudice to the insurer.

## C. *Clementi*'s Applicability to Liability Policies

### 1. Stare Decisis

In *Clementi,* we limited our holding to cases involving a UIM policy because we did not have a case before us that involved a liability policy. *Clementi,* 16 P.3d at 228 n. 5 ("We need not consider today whether our ruling in *Marez* continues to apply to liability insurance cases because this issue is not presented by the case at bar.").[2]

■ Under stare decisis principles, we must now decide whether the *Clementi* rationale applies to liability policies and, if so, whether we should overrule *Marez.*

■ Stare decisis is a judge-made doctrine that promotes uniformity, certainty, and stability of the law and the rights acquired thereunder; but the rule is not inflexible or immutable, because the courts must take into account statutory or case law changes that undermine or contradict the viability of prior precedent. *In Re Title, Ballot Title, and Submission Clause, and Summary for 1999– 2000 No. 29,* 972 P.2d 257, 262–63 (Colo. 1999).

■ We will apply prior precedent unless we are clearly convinced that (1) the rule was originally erroneous or is no longer sound due to changing conditions and (2) more good than harm will come from departing from precedent. *Giampapa v. American Family Mut. Ins. Co.,* 64 P.3d 230, 239 (Colo. 2003); *People v. Blehm,* 983 P.2d 779, 788 (Colo.1999). We "must be willing to overrule a prior decision where sound reasons exist and where the general interests will suffer less by such departure than from a strict adherence." *Title, Ballot Title, and Submission Clause and Summary for 1999–2000 No. 29,* 972 P.2d at 262 (citation omitted).

**2.** We also made a statement in *Clementi* that *Marez* was a "no-notice liability case," and we found it to be "inapplicable in determining whether insurer prejudice should be considered in the UIM late-notice case at bar." *Clementi,* 16 P.3d at 228. We recognize that this statement might be read as reaffirming the *Marez* rule as to all cases other than UIM cases. We clarify that we did not intend to make a holding to this

effect; rather, we were distinguishing *Marez* at that time and chose to leave the potential applicability of our *Clementi* rationale to a liability policy case to some future time. Here, the parties before us have had the opportunity to argue whether the *Clementi* rationale should apply only to UIM cases and whether *Marez* should be overruled in whole or in part.

Undertaking the stare decisis analysis here, we examine whether the *Clementi* rationale applies to a liability policy, whether it has displaced *Marez* as the prior precedent we must apply to the case now before us, and whether we should overrule *Marez* in whole or in part.

In *Marez*, the insurer received absolutely no written or verbal notice of claim from the insured, and the insurer brought the declaratory judgment action to disavow any obligation to provide coverage under those circumstances:

> It was stipulated that neither Bernadette Valdez nor Julia Montoya ever provided written notice of the accident to Dairyland. . . . [The trial court found] as a fact that no verbal notice of the accident was ever given.
>
> . . . .
>
> We emphasize that in the present case Valdez and Montoya, without justifiable excuse or extenuating circumstances, totally failed to give notice of any kind whatsoever to Dairyland, and that it was only by chance that Dairyland learned of the accident and lawsuit two and one-half years after the accident.

*Marez*, 638 P.2d at 288–89.

We carefully couched our preclusion of coverage holding in that case to the absolutely no-notice circumstances:

> In accordance with the rule of law consistently followed over the years by our courts, under the circumstances of the present case the failure of Valdez and Montoya to comply with the notice of accident and suit conditions, as a matter of law, constituted a material breach of the contract of insurance, relieving Dairyland of its duty to defend the insureds and to indemnify them with respect to any judgment holding them liable for the injuries to Marez.

*Id.* at 289.

We have a heightened responsibility to scrutinize insurance policies for provisions that unduly compromise the insured's interests; provisions of an insurance policy that violate public policy and principles of fairness may be unenforceable. *Huizar v. Allstate Ins. Co.*, 952 P.2d 342, 344 (Colo.1998).

In adopting the notice-prejudice rule in *Clementi*, we implemented our heightened-duty inquiry responsibility, as we do here. Courts must take into account statutory or case law changes that undermine or contradict the viability of prior precedent.

*Clementi* was a late-notice case. Although it did not involve a liability policy, we conclude that the grounds on which we applied the notice-prejudice rule in that case also apply to liability policies. In *Clementi*, citing *Marez*, we observed that "for twenty-five years Colorado has adhered to the traditional approach that an unexcused delay in giving notice relieves the insurer of its obligations under an insurance policy, regardless of whether the insurer was prejudiced by the delay." *Clementi*, 16 P.3d at 227. After limiting ourselves to the particular context of that case, a UIM policy, we then stated that "[f]ew courts today strictly adhere to the traditional approach which allowed for no consideration of insurer prejudice in determining whether benefits should be denied due to noncompliance with an insurance policy's notice requirements." *Id.* at 228.

Thus, in *Clementi*, we departed from our early Twentieth Century case, *Barclay v. The London Guarantee and Accident Company, Ltd.*, 46 Colo. 558, 105 P. 865 (1909), that formulated the traditional approach we continued to apply in *Marez*. Because of its reasoning and departure from the *Barclay* and *Marez* line of cases in favor of the notice-prejudice rule adopted by the majority of jurisdictions throughout the United States, we find that *Clementi*, not *Marez*, is the applicable stare decisis precedent. Accordingly, for the reasons we now state, we overrule *Marez* to the extent it applies to liability policies involving late notice.

### 2. Applicability of *Clementi*

In *Clementi*, we cited three reasons for joining the majority of jurisdictions in applying the notice-prejudice rule: (1) the adhesive nature of insurance contracts, (2) the public policy objective of compensating tort victims, and (3) the inequity of the insurer receiving a windfall and the insured not re-

ceiving policy benefits, due to a technicality. *Clementi, Id.* at 229. We restricted our holding and our discussion to the UIM policy then before us. Because we limited our holding in this way, we declined to state whether the *Clementi* rationale, rather than *Marez*, would apply to a liability policy. *Clementi, Id.* at 228.

Nevertheless, insurers and the legal profession did not mistake a reasonably apparent implication that the *Clementi* rationale would also apply to liability policies, despite *Marez.* A Colorado commentator, for example, observed that the notice-prejudice standard of *Clementi* would likely be made applicable to liability and UIM policies alike. *See* Hersh, 30 Colo. Law. at 85–86.

We agree. The three concerns we articulated in *Clementi*—the adhesive nature of insurance contracts, the public's interest in compensating tort victims, and the inequity of an insurer receiving a windfall from a technicality—also apply to liability policies.

First, an insured has an unequal bargaining position when contracting for either liability coverage or UIM coverage. As we discussed in *Brekke* and *Goodson v. American Standard Insurance Co. of Wisconsin,* 89 P.3d 409, 414 (Colo.2004), insurance contracts are unlike ordinary bilateral contracts. Insureds enter into insurance contracts for the financial security obtained by protecting themselves from unforeseen calamities and for peace of mind, rather than to secure commercial advantage as with a negotiated business contract. *See Goodson,* 89 P.3d at 414. In both liability and UIM contracts, as with the case now before us, the insured is typically provided with form contracts promulgated by the insurer, and there is a disparity of bargaining power. *See Brekke,* 105 P.3d at 188.

Second, liability coverage is for the protection of the insured against liability to a third party and for the protection of the innocent tort victim who suffers personal injury or property damage for which the insured is liable. A UIM policy protects the insured who invokes it for injuries caused by another, but the underlying principle of such coverage is that the tort victim (the insured) should be made whole within the limits of the coverage due to non-payment by the liable party.

In Colorado, there is a strong public policy in favor of protecting tort victims; this is a fundamental purpose of insurance coverage, whether or not the state makes the particular coverage mandatory to obtain. As discussed in *Clementi,* the General Assembly has enacted the Motor Vehicle Financial Responsibility Act, stating that it was "very much concerned with the financial loss visited upon innocent traffic accident victims by negligent motorists who are financially irresponsible." § 42–7–102, C.R.S. (2004); *Clementi,* 16 P.3d at 229. General comprehensive liability policies are not mandated by law, as opposed to UIM coverage, but nevertheless serve the purpose of compensating tort victims.

Third, as with UIM coverage, the insured pays premiums for the protection provided by the liability policy, and the insurer should not reap a windfall through a technicality it invokes to deny coverage. *See Clementi,* 16 P.3d at 230 (*citing Brakeman v. Potomac Ins. Co.,* 472 Pa. 66, 371 A.2d 193, 198 (1977)). The notice of claim and notice of suit provisions of the general comprehensive liability policies at issue here constitute the parallel technicality to which we applied the notice-prejudice rule in *Clementi.*

In short, no aspect unique to liability insurance renders the notice-prejudice rule any less compelling than it was in the *Clementi* context. Although differences in liability and UIM motorist coverage may influence the motivation for an insured to give timely notice to the insurer, *see State Farm Mutual Automobile Ins. Co. v. Burgess,* 474 So.2d 634, 636–37 (Ala.1985)(distinguishing between UIM insured's and liability insured's motivations for giving notice for purpose of determining whether late notice was reasonable), those differences do not alter the underlying rationale for the notice-prejudice rule.

In protecting themselves against liability and damages, corporations and their officers and directors, like other persons, seek insurance to defend against possible claims and lawsuits for negligence and to obtain payment of damages, within policy limits, on

their behalf to victims if the insured is negligent. In turn, insurers price their premiums to spread the risk of loss among the population of insureds, they typically offer their policies on a take it or leave it basis, and they write them with a particular eye for inclusions and exclusions other carriers also employ. *See* 15 Eric Mills Holmes, *Holmes' Appleman on Insurance,* § 113.1 at 383–84 (2d ed. 1998 & Supp.2003).

### D. Presumption of Prejudice Where Notice Given Only After Defense and Settlement of Claim and Suit

In adopting the notice-prejudice rule for UIM cases in *Clementi,* we examined precedent applicable to liability policies and UIM policies alike, *see Clementi,* 16 P.3d at 226–28, but reserved the issue of liability policies for a future case. This is that future case. We apply in this case the notice-prejudice rule to a liability policy, as other jurisdictions have done. *See, e.g., Brakeman* 371 A.2d at 197 (adopting two-part notice-prejudice rule to liability policies); *Foundation Reserve Ins. Co. v. Esquibel,* 94 N.M. 132, 607 P.2d 1150, 1152 (1980)(insurer must demonstrate substantial prejudice resulting from material breach of policy by the insured before it will be relieved of its obligations under an automobile liability policy); *Johnson Controls, Inc. v. Bowes,* 381 Mass. 278, 409 N.E.2d 185, 188 (1980)(holding that for liability policies not covered by notice-prejudice statute, an insurance company must nevertheless prove prejudice).

 Because we adopt the notice-prejudice rule for liability cases, we expressly overrule *Marez* to the extent it applies to a late-notice liability case. Travelers argues that, even if we apply *Clementi* to liability cases, Friedland's claims are barred because his notice came so late as to constitute no notice. However, we decline to adopt a rule that treats notice after settlement as no notice. We observe that the insurer in *Marez*

never received notice directly from the insured, whereas the insurer received notice from the insured in the case before us. Nevertheless, we recognize that our decision today leaves little, if any, vitality to *Marez* because disputes will likely arise only in the context of late notice by an insured and because we adopt, as set forth below, the approach expressed by Justice Quinn in his *Marez* dissent.[3]

 In *Clementi,* we adopted a two-step approach applicable to cases involving late notice by an insured to an insurer. The trial court determines whether the notice was untimely and the delay was unreasonable; if so, the trial court addresses whether the insured was prejudiced by such untimely notice. *Clementi,* 16 P.3d at 231. In the prejudice phase, we rejected "the presumption of prejudice approach in favor of placing the burden on the insurer to demonstrate that it was prejudiced." *Id.* at 232. We now add a third step for instances where the late notice occurs after the insured's settlement of the liability case; we adopt a presumption of prejudice in favor of the insurer in such cases.

Unlike the insureds in *Clementi* and *Brekke,* Friedland gave notice after he had defended and settled the litigation. Accordingly, under the circumstances of this case, Friedland's delay was unreasonable as a matter of law, and we presume that Travelers has been prejudiced by the late notice.

Our discussion in *Clementi,* as further elucidated by *Brekke,* emphasizes the substance of the insured-insurer relationship as including significant reciprocal duties. The insurer typically owes the insured good faith defense of suit and the payment of damages to the tort victim up to the policy limits if the insured is negligent. In turn, the insured owes the insurer cooperation in the process of obtaining information, raising legitimate defenses, securing and giving evidence, at-

---

**3.** "In cases where the insured fails to provide the insurer with any notice whatever of the accident or claim ... there is a presumption of prejudice to the insurer in such cases and the insured has the burden of going forward with some evidence to dispel the presumption; if such evidence is presented, 'the presumption loses any probative

force which it may have had and it is then up to the [insurer] to go forward with the evidence that actual prejudice existed.'" *Marez,* 638 P.2d at 292 (Quinn, J., dissenting) (alteration in original) (quoting *Jennings v. Horace Mann Mut. Ins. Co.,* 549 F.2d 1364, 1368 (10th Cir.1977)).

tending hearings and trials, assisting witnesses to attend hearings and trials, and negotiating settlements. *Brekke,* 105 P.3d at 188 – 189. If these duties are fulfilled, the insured will have provided extensive information to the insurer, and the insurer will be able to investigate the case long before suit is filed, its interests will be protected, and there will be little if any necessity for the insurer to also appear in the tort litigation. *Id.*

In *Clementi,* notice was given before settlement. Thus, the analysis in *Clementi* assumed that an insurer would not be prejudiced if that insurer had an adequate opportunity to investigate the claim, present legitimate defenses to its insured's liability, and be involved in settlement negotiations. *See Clementi,* 16 P.3d at 232; *Brekke,* 105 P.3d at 191 – 192.[4]

However, in a case such as the one before us, where notice is not given until after settlement, we must assume that the insurer had none of these opportunities; thus, prejudice must be presumed.

Nevertheless, in some circumstances, an insurer might not be prejudiced despite notice occurring after defense and settlement of a case. *See Northwest Prosthetic & Orthotic Clinic, Inc. v. Centennial Ins. Co.,* 100 Wash. App. 546, 997 P.2d 972, 976, (2000)(holding that insurer there was prejudiced as a matter of law, but concluding that in some factual circumstances, failing to notify an insurer of completed litigation will not amount to actual prejudice as a matter of law, because the litigation achieved a clear cut result that is essentially beyond dispute).

Therefore, we also conclude that the insured, despite having made a unilateral settlement without notice to the insurer, must have an opportunity to rebut this presumption of prejudice based on the specific facts of the case, before a trial court may bar the insured from receiving coverage benefits.

In so holding, we adopt the standard Justice Quinn urged in his *Marez* dissent: (1) there is a presumption of prejudice to the insurer in instances where the insured provides notice after disposition of the liability case, (2) the insured has the burden of going forward with evidence to dispel this presumption, (3) if such evidence is presented, the presumption loses any probative force it may have, and (4) it is then up to the insurer to go forward with the evidence that actual prejudice existed. *Marez,* 638 P.2d at 292–93 (Quinn, J. dissenting)(*citing Jennings v. Horace Mann Mut. Ins. Co.,* 549 F.2d at 1368).

Otherwise, as Justice Quinn also wrote and we subsequently held in *Clementi,* in cases where an insurer has received unreasonably delayed notice of the suit but such notice came prior to the suit's disposition, there should be no presumption of prejudice and the insurer is required to prove prejudice. *Marez,* 638 P.2d at 293, n. 2 (Quinn, J., dissenting).

Accordingly, under the circumstances of this case, we apply a presumption of prejudice to Travelers, even though Friedland's and Travelers's interests in resisting liability and damages were arguably aligned when Friedland was making his defense and settlement decisions. In rebuttal of this presumption, Friedland should have the opportunity to introduce evidence that, in the conduct of his defense and settlement of the CERCLA claims against him, all material information that could have been obtained was obtained, all legitimate defenses were raised, his liability in the case was reasonably clear under the facts and the law, and Travelers, had it received notice, could not have obtained any materially better outcome than what Friedland obtained without Travelers's assistance. *See* Russ & Segalla, *Couch on Insurance,* § 193:29;[5] *Pulse v. Northwest Farm Bureau*

4. Indeed, in *Brekke,* in view of the assumption that an insured would discharge its duty of cooperation, we limited the insurer's participation in the liability phase of insured motorist actions to presenting legitimate defenses the uninsured motorist failed to raise, but we also recognized discretion in the trial court to allow broader participation in the damages phase. *Brekke,* 105 P.3d at 192 – 193.

5. Under this section of the treatise, Couch states the matter as follows: "In proving prejudice as a result of a delay in providing notice, it has been stated that an insurer is not required to show precisely what the outcome would have been had

*Ins. Co.*, 18 Wash.App. 59, 566 P.2d 577, 579 (1977)(concluding that insurer was not prejudiced as a matter of law despite receiving notice after judgment because "it is highly questionable whether they could have been more persuasive than the plaintiffs' counsel in keeping the amount of the damages down. At best, it would have chosen different counsel, would have demanded a jury, and may or may not have chosen a different judge to preside over the trial.").

If Friedland successfully rebuts the presumption of prejudice, Travelers must show by a preponderance of the evidence that it suffered actual prejudice from the delayed notices of claim and suit in order to be excused from paying policy benefits. What form the proceedings on remand shall take regarding in the issues of prejudice, Friedland's unilateral settlement, and the policy coverage, we leave to the trial court's further determination.[6]

### III.

Accordingly, we set aside the trial court's grant of summary judgment, and we remand this case for further proceedings consistent with this opinion.

Justice KOURLIS dissents.

Justice COATS dissents.

Justice BENDER does not participate.

Justice KOURLIS dissenting.

Today, this court extends the notice-prejudice rule to general liability insurance cases, essentially overruling our longstanding precedent in *Marez v. Dairyland Insurance Co.*, 638 P.2d 286 (Colo.1982). Maj. op. at 645. Since I do not believe that this is a case that necessarily or appropriately demands such an outcome, I respectfully dissent.

### I. BACKGROUND

In this case, the relevant and undisputed facts are as follows: (1) the parties to the insurance policies at issue were two companies, Summitville Consolidated Mining Company, Inc. ("SCMCI") and Travelers; (2) Friedland is a sophisticated international businessman who presided as president and director of SCMCI for three years; (3) Friedland's tenure began when the company first started construction of a gold mine and heap leach facility near Del Norte, Colorado; (4) Friedland presided over the company at the time Travelers issued the two Special Business liability policies to SCMCI, which policies covered among others, officers and directors of SCMCI; (5) the policy as then issued, even included a separate written endorsement including Friedland as a named insured covering his personal automobile.

In its order concerning Traveler's motion for summary judgment, the trial court specifically alluded to Friedland's knowledge of the existence of the policy by characterizing as a salient fact, evidence that "in 1984 and 1985 when the policies at issue were procured by SCMCI insuring plaintiff as an additional insured, [Friedland] was an officer and director of SCMCI." Moreover, the court pointed out the undisputed fact that Friedland did not notify Travelers of the CERCLA claims until six years after the claims were filed. Significantly, the court observed that Friedland had actual knowledge of the existence of the policy at the time he entered into settlement negotiations, which knowledge arose a year prior to his seeking to be indemnified by Travelers. The court, thus, granted Traveler's motion, concluding that Friedland had demonstrated no justifiable excuse for failing to notify the company of the CERCLA action.

timely notice been given to make a showing of substantial prejudice. However, an insurer must show the precise manner in which its interests have suffered, meaning that an insurer must show not merely the possibility of prejudice, but, rather, that there was a substantial likelihood of avoiding or minimizing the covered loss, such as that the insurer could have caused the insured to prevail in the underlying action, or that the in-

surer could have settled the underlying case for a small sum or smaller sum than that for which the insured ultimately settled the claim."

6. We do not address the other issues Travelers raised in its summary judgment motion, because the trial court did not address them in its summary judgment ruling.

## II. DISCUSSION

In *Marez*, this court maintained its, by then, almost century-old principle that an insurance contract's notice provision should not be "lightly ignored or set aside without *substantial justification*." 638 P.2d at 291. There, holders of an automobile insurance policy failed to notify the insurer of an accident as was required by the policy. *Id.* at 288. We rejected the argument that under those circumstances, the insured could be relieved of its obligations under the contract unless the insurer was prejudiced by the delay. *Id.* Though we classified *Marez* as a failure to notify case, our delayed-notice precedent clearly formed the foundation of our decision. We considered the landmark case, *Barclay v. London Guarantee & Acc. Co.*, 46 Colo. 558, 563, 105 P. 865, 867 (1909), in which this court, emphasizing the fundamental concept that condition precedents in insurance contracts are not to be set aside without substantial justification, refused to disregard a two-month delay in notifying the insurer. The *Barclay* court made clear that "we are not announcing the rule that under no circumstances could the written notice or notices be dispensed with," explaining that some legal excuse for the late notice might vitiate the refusal to comply with the contract requirement. *Id.* at 564, 105 P. at 867. We highlighted that our post *Barclay* jurisprudence had firmly adhered to the principles we announced in that case, citing for illustrative purposes several general liability cases in which we and the court of appeals had followed *Barclay* even though notice of suit or accident had been delayed but eventually given. *See, e.g., Certified Indem. Co. v. Thun*, 165 Colo. 354, 360, 439 P.2d 28, 30 (1968); *Cochran v. Mass. Bonding & Ins. Co.*, 76 Colo. 198, 230 P. 788 (1924); *Thomas v. Guar. Nat'l. Ins. Co.*, 43 Colo.App. 34, 597 P.2d 1053 (1979). Our reference to the precedent, therefore, demonstrated that our century-old rule announced in *Barclay*, requiring substantial justification for the departure from the notice provision, was intended to apply to all cases in which the insured sought to avoid the strictures of the contract notice provision. Indeed, in *Marez* we discussed the Tenth Circuit opinion in *Jennings v. Horace Mann Mutual Insurance Co.*, 549 F.2d 1364 (10th Cir.1977), which advocated the very principle this court now adopts. We acknowledged that, as in that case, the modern trend among courts was to take into account the prejudice to the insurance company occasioned by an unexcused delay; we refused to adopt such a new rule when the facts did not justify departure from the *Barclay* rule. *Id.* at 290–91. We reasoned that "were we to attempt to adopt a new rule of law embodying the various aspects of the concept of prejudice, we would be formulating an abstract rule in a factual vacuum." *Id.* at 291.

*Marez* thus left room for the possibility that a certain "factual context" might "compel, in the interest of justice," that we depart from the principles announced in *Barclay*. 638 P.2d at 291.

Almost a decade later, we addressed just such a factual context and adopted the notice-prejudice rule in an Uninsured Motorist ("UM") case: *Clementi v. Nationwide Mutual Fire Insurance Co.*, 16 P.3d 223 (Colo. 2001). There, we took pains to distinguish *Marez*, noting that its holding applied to liability cases and was therefore inapplicable to UM cases. *Id.* at 228.

Today, this court overrules *Marez*, concluding that our underlying policy reasons for adopting the notice-prejudice rule in *Clementi* justifies extending that doctrine to all liability cases via the situation at bar. I respectfully disagree. Our holding in *Clementi* did not impugn the essential maxim (which protects both parties to the insurance contract) that deviation from the notice provision is permitted only if "substantial" justification is shown. It is certainly true that we recognized several policy bases for requiring that the insurer demonstrate prejudice when the insured delays in notifying the insurer, including "the unequal bargaining power of the parties to an insurance policy." *Id.* at 230. However, such policy interests were never intended to subsume every aspect of insurance litigation. Considering the gamut of insurance disputes, *Clementi* did not purport to resolve the question in all of those contexts. Indeed, the majority correctly notes that we have articulated a "heightened

responsibility to scrutinize insurance policies for provisions that unduly compromise the insured's interest." Maj. op. at 645. However, we have considered our duty most pronounced, not in cases of arms-length insurance agreements between two companies, see, e.g., *Martinez v. Lewis*, 969 P.2d 213 (Colo.1998), but rather, in cases involving unsophisticated individual policyholders. See, e.g., *State Farm Mut. Auto. Ins. Co. v. Brekke*, No. 03SC585, 2004 WL 2782262 (Colo. Dec.6, 2004); *Goodson v. Am. Standard of Wis.*, 89 P.3d 409 (Colo.2004); *Clementi v. Nationwide Mut. Fire Ins.*, 16 P.3d 223 (Colo.2001); *Huizar v. Allstate Ins. Co.*, 952 P.2d 342 (Colo.1998); *Farmers Group, Inc. v. Trimble*, 691 P.2d 1138 (Colo.1984).

The instant case does not fall within that category. Additionally, it does not legitimately raise the question of whether *Clementi* should extend to general liability insurance cases for yet another reason. As the majority notes, maj. op. at 644, in *Clementi*, we were faced with a five month delay in the notification process, which notice occurred before the underlying litigation expired. Here, although the majority refuses to classify this case as a no-notice case, see maj. op. at 647, this insured did not notify the insurer of the underlying litigation until over six years after he became aware of the circumstances giving rise to coverage, and after he had settled the claim. The majority seems to be adopting the result espoused by the *Marez* dissent, which argued for a shifting burden of presumption only "in cases where the insured fails to provide the insurer with any notice whatever of the accident or claim," see *Marez*, 638 P.2d at 292 (Quinn, J., dissenting), adding that no prejudice would be presumed in any late notice case, see *id.* at n. 2, 638 P.2d 286. In fact, such a substantial delay in notifying the insurer in a case such as this has sometimes been characterized as prejudice as a matter of law and sufficient to justify denial of coverage. See *Am. Mut. Liab. Ins. Co. v. Beatrice Co., Inc.*, 924 F.Supp. 861, 875 (N.D.Ill.1996) (holding that sophisticated insured's delay of more than one year in giving notice to liability insurers unreasonable and unexcused); *Avco Corp. v.*

*Aetna Cas. & Sur. Co.*, 679 A.2d 323, 328 (R.I.1996) (holding insurer prejudiced where meaningful investigation of environmental contamination prevented by two-year delay); accord *West Bay Exploration Co. v. AIG Specialty Agencies of Tex., Inc.*, 915 F.2d 1030 (6th Cir.1990); *Fireman's Fund Ins. Co. v. ACC Chem. Co.*, 538 N.W.2d 259 (Iowa 1995). In total, the evidence and circumstances of this case do not suggest circumstances that should compel the court to overrule *Marez*.

## III. CONCLUSION

In *Marez*, we refused to extend the notice prejudice rule to general liability cases, leaving room for "substantial justification" for departing from that holding. *Clementi* honored that holding. Because *Marez* is the law and this case does not pose a circumstance in which that precedent need be reconsidered, let alone overruled, I respectfully dissent. I would affirm the trial court order granting Traveler's motion for summary judgment.

COATS, J., dissenting.

With its opinion today the majority deals a serious blow to the principle of *stare decisis* and, I believe, continued confidence in the legitimacy of court-made law. Not only does the majority overturn basic and long-established contract law, expressly reconsidered and reaffirmed in this very context, by this very court, not a quarter-century ago; it trivializes (to the point of rejecting) its obligation to either adhere to established precedent or justify a departure from it. If the highest court of a jurisdiction no longer accepts, even in principle, that its current disposition is constrained by its own prior pronouncements, its judgments become as ephemeral as the make-up of the court at any given moment in history. Because I can see no justification for overruling our holding in *Marez v. Dairyland Insurance Co.*,[1] and because I consider it particularly gratuitous to do so for reasons no more compelling than those presented by the case before us today, I respectfully dissent.

1. *Marez v. Dairyland Ins. Co.*, 638 P.2d 286 (Colo.1981).

*Stare decisis,* the common-law principle requiring adherence by courts to decided cases, is of course not an inexorable command, especially in cases of constitutional interpretation, which cannot be altered by legislation. *See Planned Parenthood of Southeastern Pa. v. Casey,* 505 U.S. 833, 854, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992); *id.* at 954, 112 S.Ct. 2791 (Rehnquist, C.J., dissenting). Courts have identified a number of considerations bearing on the propriety of departing from precedent, including, among others, the practical workability of a prior decision; the extent to which a departure would work hardship or inequity upon those who have relied on and ordered their behavior around the prior ruling; whether related legal principles have developed in such a way as to leave the prior ruling without justification; and whether factual presumptions at the time of a prior ruling have since proven to be untrue. *See, e.g., id.* at 854–55, 112 S.Ct. 2791. While there may be disagreement about the scope and applicability of the various justifications for departing from established precedent, as well as about the extent to which public confidence in the legitimacy of court-made law can withstand announcements that prior judgments were simply wrong, there can be little question that more is required than "a present doctrinal disposition to come out differently." *Id.* at 864, 112 S.Ct. 2791 (citing *Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 636, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974) (Stewart, J., dissenting) ("A basic change in the law upon a ground no firmer than a change in our membership invites the popular misconception that this institution is little different from the two political branches of the Government. No misconception could do more lasting injury to this Court and to the system of law which it is our abiding mission to serve.")).

Although the majority acknowledges this fundamental principle, it promptly rejects its limitations, for no better reason than its current assessment that "more good than harm will come from departing from precedent." Maj. op. at 644. In *Marez,* a different membership of this court expressly considered and rejected the very rule adopted by the majority today, and reaffirmed the applicability of traditional contract principles to this aspect of insurance contracts. Other than the adoption of the "notice-prejudice" approach by more jurisdictions since that time, the majority offers no changes in statutes or practice, or additional arguments not already considered and rejected in *Marez.* While the choice of other jurisdictions may be some cause for the appropriate branch of this state's government to carefully examine the wisdom of its public policy, it most certainly is not a ground, in itself, for overturning our own established precedent. And the majority's clear preference for a change in policy hardly amounts to an assertion that long-established law has for some reason become unworkable.

Actually, the majority implies that no reason for overturning our prior law is called for because we had already, in effect, overruled *Marez* with regard to late-notice cases in *Clementi v. Nationwide Mutual Fire Insurance Co.,* 16 P.3d 223 (Colo.2001). Nothing could be further from the case. In *Clementi* this court went to great lengths to make clear that it was not overruling the traditional rule reaffirmed in *Marez.* We carefully explained why the uninsured motorist policy at issue there involved considerations substantially different from those of liability insurance policies and that unlike the latter, we had never suggested that the former should be governed by the traditional contract rule. Rather than articulating any ground for overturning *Marez,* we therefore considered ourselves free to determine an appropriate notice-prejudice rule for statutorily-dictated, uninsured motorist policies.

The majority does not even challenge the logic or scholarship of the *Marez* court in construing or applying constitutional limitations, legislative dictates, or prior case law. It simply disagrees with the holding of *Marez* (and established contract principles) as a matter of public policy, and proceeds to do precisely what we expressly refused to do in *Clementi.* Furthermore, even if it were within the realm of this court to make such policy determinations, the considerations upon which it relies to overturn more than a century of established law have virtually no applicability to the current controversy.

Whatever the practical realities of insurance policies entered into by individual consumers, motorists, or homeowners may be, absolutely nothing suggests that this policy, purchased by the Summitville Consolidated Mining Company to insure against environmental lawsuits, was in the nature · of an adhesion contract or was purchased for some reason other than its commercial advantage. *See* maj. op. at 646. Nor should any public policy goal of this state to protect "third-party tort victims" (to the extent that such a policy has actually existed) apply to federal and state governments seeking damages under anti-pollution legislation. *See id.* at 646. Finally, a case in which the insurer is not notified for more than six years, after the insured has already settled the claim, hardly raises concerns that the insurer might reap a windfall from a technical or de minimis reporting violation. *See id.* at 646.

In fact, the majority's characterization of a claim made after the insured has already admitted liability, and a final settlement has already been reached, as "late notice" rather than no notice at all, merely accentuates the lengths to which it has gone to overturn law with which it disagrees. In addition to creating a highly debatable rule, in which the applicability of a prejudice requirement turns on non-discovery by the insurer prior to a claim by the insured, the majority is forced to "modify" its analysis in *Clementi* to reduce the clear unfairness of requiring an insurer to initially go forward with a demonstration of prejudice in such a case. By openly adopting the dissenting rationale in *Marez*, maj. op. at 648, the majority leaves little room for doubt that any suggestion of restraint in its holding or the continued vitality of any aspect of the majority opinion in *Marez* is illusory.

In *Marez*, this court noted the salutary purposes of notice provisions in insurance contracts and warned against setting them aside without substantial justification. *Marez*, 638 P.2d at 291. "Absent a factual context which compels, in the interests of justice, a departure from our present long established rule and the adoption of a new rule based on different considerations," we there held (and wisely I believe) that it would be "jurisprudentially sound to leave the matter to another day, or to the wisdom of the general assembly." *Id.* I have noted elsewhere what I consider to be the willingness of this court to abandon well-established principles of both contract and tort law, without even needing to do so to resolve a particular case or controversy, and to take upon itself the task of regulating the insurance industry, according to its own preferences for administering risk. *See, e.g., Goodson v. Am. Standard Ins. Co. of Wis.*, 89 P.3d 409, 418–19 (Colo.2004) (Coats, J., concurring in the judgment only). It would be difficult to imagine a more unlikely case to serve as the vehicle for overturning more than a century of contract law in this jurisdiction, even if grounds for departing from precedent could be found.

Because I believe that the majority has failed to present adequate justification for its decision to abandon well-established precedent in this case, and that actions like those taken by the court today can only erode public confidence in the judicial decision-making process, I respectfully dissent.