# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 97-2712

| | | |
|---|---|---|
| Rahr Malting Company, | * | |
| | * | |
| Plaintiff-Appellant, | * | |
| | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota |
| | * | |
| Climatic Control Company, | * | |
| Inc., | * | |
| | * | |
| Defendant-Appellee. | * | |

_____

Submitted: March 13, 1998
Filed: July 24, 1998

_____

Before BEAM and HEANEY, Circuit Judges, and KOPF,[1] District Judge.

_____

KOPF, District Judge.

Rahr Malting Company (Rahr) appeals from the decision on cross motions for

_____

[1] The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska, sitting by designation.

declaratory judgment entered in favor of Climatic Control Company, Inc. (Climatic). Rahr asserts that the district court erred in construing a waiver clause contained in a standard American Institute of Architects' contractor agreement. After careful consideration, we conclude the district court's decision was correct[2] and we affirm.

## I.

### Factual Background

Rahr owns and operates a production plant in Shakopee, Minnesota, which processes barley into malt for the beer industry. This processing occurs in buildings referred to as "malthouses." In 1992, Rahr decided to build a new malthouse, and contracted with Climatic to design and install the computerized Process Control System (PCS) for Malthouse 5.

Rahr alleges Climatic was negligent in the installation of the PCS for Malthouse 5 which regulates movement of malt from the malthouse to conveyors and storage silos during the drying process. On June 16, 1994, Rahr was processing barley in the malthouse. As a result of alleged negligence of Climatic, the finished malt was diverted to the malthouse instead of the storage silos and explosive malt dust accumulated in a conveyor, ignited, and exploded. There was a fire and two workers were injured. In the aftermath of the explosion Rahr suffered damages in excess of six million dollars. Rahr's losses have been paid by its insurer subject to this subrogation claim against Climatic.

---

[2]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

## Contract Provisions

The parties asked the district court to interpret a waiver provision in the construction contract between Rahr and Climatic. The contract is a standard American Institute of Architects (AIA) A201/CM contract.

The contract requires that each party to "the work" obtain insurance. "The work" is defined as "the completed construction required of the Contractor by the Contract Documents, and includes all labor necessary to produce such construction and all materials and equipment incorporated or to be incorporated in such construction." Article 1.1.3.

The contract obligated Climatic to purchase and maintain insurance covering the contractor's operations for "claims for damages <u>other than to the work itself</u> because of injury to or destruction of tangible property, including loss of use resulting therefrom." Article 11.1. (Emphasis added.) On the other hand, Rahr was required to purchase and maintain insurance "upon <u>the entire Work</u>" covering "the interests of the Owner, the Construction Manager, the Contractor, the Subcontractor and Sub-subcontractors <u>in the Work</u>." (Article 11.3.1) (Emphasis added.) Specifically, Rahr was to "insure against the perils of fire and extended coverage and shall include 'all risk' insurance for physical loss or damage." (Article 11.3.1.)

At the heart of this dispute is the waiver clause. It provides: "The Owner and Contractor waive all rights against each other . . . for damages caused by fire or other perils <u>to the extent covered by insurance obtained pursuant to this paragraph 11.3 or any other property insurance applicable to the work.</u>" Article 11.3.6. (Emphasis added.)

To fulfil the insurance obligations under the contract, Rahr utilized its existing insurance. Rahr's existing insurance covered both "work" and "nonwork" property.

In other words, the insurance that Rahr used to satisfy its obligation under the contract was more extensive than the contract required. Climatic obtained the insurance that it was required to carry under the contract.

## Procedural History

The question presented to the district court was whether Rahr had waived the claim against Climatic for damages when it elected to satisfy its contractual insurance obligation with insurance that covered both "work" and "nonwork" related property. Rahr argued that the waiver extended only to its insurance covering the "work" since that was the only insurance it was contractually obligated to carry. Climatic argued, in contrast, that when Rahr elected to use insurance that was broader than required by the contract, it likewise waived any claims against Climatic to the extent of that coverage.

The district court found in favor of Climatic. Applying Minnesota law, as the parties agreed was appropriate, the court held that "Rahr waived all claims against Climatic for damages caused by fire or other perils to the extent that: 1) Rahr's insurance obtained pursuant to Paragraph 11.3 covered the damage; or 2) Rahr's property insurance applicable to the Work covered the damage."

At the time the district court entered judgment, neither this court nor the Minnesota state courts had construed the waiver clause in an AIA contract. During oral argument, we were advised that the Minnesota Supreme Court had recently granted review in a case seeking interpretation of a similar AIA waiver clause. Consequently, we held this case in abeyance and directed the parties to advise us when the Minnesota Supreme Court issued its opinion.

The Minnesota Supreme Court has now issued its opinion. See Employers Mut. Cas. Co. v. A.C.C.T., Inc., No. C0-97-7, 1998 WL 334653 (Minn., June 25, 1998).

-4-

The court held that the subrogation waiver clause found in the standard American Institute of Architects' contractor agreement acts as a complete bar to any subsequent subrogation claim made by the owner's insurance company when the owner relies upon an existing all-risk insurance policy which is broader in scope than what is required by the contract, regardless of whether the damaged property can be classified as "work" or "nonwork" property.  Id. at * 4-5.

In reaching this decision, the Minnesota Supreme Court acknowledged that the "same issue is currently pending before the Eighth Circuit Court of Appeals in Rahr Malting Co. v. Climatic Control." Id. at * 5 n.3.  In fact, the parties or their counsel in this case submitted briefs in the Employers Mutual case.  Id.

## II.

When a district court has interpreted an unambiguous written document, the standard of review by this court is de novo.  See, e.g., Horton Mfg. Co., Inc. v. Tol-O-Matic, Inc., 973 F.2d 649, 650 (8th Cir. 1992).  Likewise, when we review a district court's determination of state law, the standard of our review is also de novo.  See, e.g., Haugen v. Total Petroleum, Inc., 971 F.2d 124, 126 (8th Cir. 1992).

Did the district court properly apply Minnesota law when construing the unambiguous waiver clause in the standard AIA contract?  Given the Employers Mutual decision, it is apparent that the district court ably predicted and then correctly applied Minnesota law.  Accordingly, we affirm.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-5-