COPPER MOUNTAIN, INC., Petitioner

v.

INDUSTRIAL SYSTEMS, INC.; and
Amako Resort Construction
(U.S.), Inc., Respondents.

No. 08SC28.

Supreme Court of Colorado,
En Banc.

March 16, 2009.

Jacobs Chase Frick Kleinkopf & Kelley, LLC, Elizabeth L. Harris, Ann B. Frick, Denver, Colorado, Attorneys for Petitioner.

Montgomery Little Soran & Murray, PC, Daniel P. Murphy, Michael J. Decker, Littleton, Colorado, Attorneys for Respondent Industrial Systems, Inc.

The Hustead Law Firm, PC, Patrick Q. Hustead, Melissa W. Shisler, Denver, Colorado, Attorneys for Respondent Amako Resort Construction (U.S.), Inc.

Justice HOBBS delivered the Opinion of the Court.

We granted certiorari to review the court of appeals' published opinion in *Copper Mountain, Inc. v. Industrial Systems, Inc.*, No. 06CA0560, 209 P.3d 1103, 2007 WL 4198390 (Colo.App. Nov.29, 2007). The issue for determination is whether a provision in a contract between Copper Mountain, Inc. ("Copper") and Amako Resort Construction (U.S.), Inc. ("Amako") bars Copper's claims against Amako and Amako's subcontractor, Industrial Systems, Inc. ("Industrial"), for fire-related damages to a ski lodge that Amako and Industrial were renovating.[1] The court of appeals affirmed the trial court's determination that a waiver clause in the contract precludes Copper's claims against Amako and Industrial. We reverse.

We hold that the contract does not bar Copper's claims against Amako and Industrial for damages to property that was not part of the contractual Work, despite the fact that Copper insured the damaged property under an existing policy covering the Work. Under paragraph 11.4.7 of the contract, Copper waived rights against Amako for damages caused by fire "to the extent covered by property insurance obtained pursuant to this Paragraph 11.4 or other property insurance applicable to the Work...."[2] We conclude that this clause only bars claims for damages to the contractual Work, and does not bar claims for damages to non-Work property. We further conclude that the waiver provision of paragraph 11.4.5 only applies to project Work addressed by paragraph 11.4.7.

In *Town of Silverton v. Phoenix Heat Source System, Inc.*, 948 P.2d 9, 12 (Colo.

---

1. We granted certiorari on the following issue: Whether the court of appeals erred in ruling a waiver of subrogation provision in an American Institute of Architects ("AIA") form contract barred all of owner-plaintiff's claims, thereby creating a conflict with another decision of the court of appeals, *Town of Silverton v. Phoenix Heat Source System, Inc.*, 948 P.2d 9 (Colo.App.1997), which held the waiver provision barred only claims for damages to the "Work" required to be insured by the owner under the contract.

2. This type of provision is often referred to as a "waiver of subrogation." In most reported cases concerning analogous provisions, property owners have subrogated their claims to insurers, and in some instances the insurer has assigned its subrogation rights back to the owner. *See, e.g., Silverton*, 948 P.2d at 11. In the present case, however, Copper is pursuing its own claims for damages, so we simply refer to paragraph 11.4.7 as a "waiver provision" or "waiver clause."

App.1997),[3] the court of appeals held that a provision parallel to paragraph 11.4.7 did not bar the owner's claims for damages to non-Work property, and the presence of a provision parallel to paragraph 11.4.5 did not foreclose such a conclusion. We determine that *Silverton* was correctly decided, and we choose to follow it. In this case, the plain language and contextual setting of paragraphs 11.4.7 and 11.4.5 demonstrate that Copper did not waive its claims for damages to non-Work property.

## I.

Copper hired Amako to perform renovations on and build an addition to the Union Creek Lodge at Copper Mountain Resort. On August 10, 2001, Copper and Amako entered into a standard American Institute of Architects ("AIA") Owner–Contractor Agreement to govern the construction. Amako subcontracted with Industrial to build the steel framework for the addition.[4]

The Work of the contract is defined by paragraph 1.1.3 as "the construction and services required by the Contract Documents, whether completed or partially completed, and ... all other labor, materials, equipment, and services provided or to be provided by the Contractor to fulfill the Contractor's obligations."[5]

Several relevant provisions of the contract set forth Amako's responsibilities concerning liability and insurance. Paragraph 3.3.2 provides that Amako "shall be responsible to [Copper] for acts and omissions of [Amako's] employees [and] Subcontractors ... and their agents and employees...." Paragraph 10.2.5 requires Amako to "promptly remedy damage and loss (other than damage or loss insured under property insurance required by the Contract Documents)" that Amako or its subcontractors caused to the Work, or to other property at or adjacent to the site, such as structures not designated for removal, relocation, or replacement during the construction.[6] Pursuant to article 11 ("Contractor's Liability Insurance") and paragraph .5 of article 11, Amako agreed to procure insurance to protect Amako from claims "which may arise out of or result from [Amako's] operations under the Contract and for which [Amako] may be legally liable, whether such operations be by [Amako] or by a Subcontractor," including "[c]laims for damages, other than to the Work itself, because of injury to or destruction of tangible property...."

■■■ Copper's responsibilities for procuring insurance are set forth in paragraph 11.4.1:

Unless otherwise provided, [Copper] shall purchase and maintain ... property insurance written on a builder's risk "all-risk" [[7]] or equivalent policy form in the amount of the Initial Contract Sum, plus value of subsequent Contract modifications and

---

**3.** We granted certiorari to review *Silverton* on December 2, 1997, and dismissed certiorari based on a stipulated motion for dismissal on June 30, 1998.

**4.** In turn, Amako and Industrial entered into a subcontract that incorporated the terms of the contract between Copper and Amako.

**5.** The "Project" is defined by paragraph 1.1.4 as "the total construction of which the Work performed under the Contract Documents may be the whole or a part and which may include construction by the Owner or by separate contractors." Counsel for Copper informed us at oral argument that the Project and Work were co-extensive in this case.

**6.** Paragraph 10.2.5 reads: "The Contractor shall promptly remedy damage and loss (other than damage or loss insured under property insurance required by the Contract Documents) to property

referred to in Clauses 10.2.1.2 and 10.2.1.3 caused in whole or in part by the Contractor, a Subcontractor, [or their employees]...." Paragraph 10.2.1.2 covers "the Work and materials and equipment to be incorporated therein, whether in storage on or off the site, under care, custody or control of the Contractor or the Contractor's Subcontractors...." Paragraph 10.2.1.3 covers "other property at the site or adjacent thereto, such as trees, shrubs, lawns, walks, pavements, roadways, structures and utilities not designated for removal, relocation or replacement in the course of construction."

**7.** All-risk policies cover all losses, except those specifically excluded. *Heller v. Fire Ins. Exch.*, 800 P.2d 1006, 1007 n. 1 (Colo.1990). Builder's risk policies typically indemnify a contractor against the loss of, or damage to, a building the contractor is constructing. 1 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 1.53 (3d ed.1997).

cost of materials supplied or installed by others, comprising total value for the entire Project at the site on a replacement cost basis without optional deductibles.

If Copper did not purchase insurance to cover the Work, Amako could "effect insurance [to] protect the interests of [Amako and its subcontractors] in the Work," and charge that cost to Copper, pursuant to paragraph 11.4.1.2.

The contract includes the following waiver of legal rights in paragraph 11.4.7:

> The Owner and Contractor waive all rights against [ ] each other and any of their subcontractors ... for damages caused by fire or other causes of loss to the extent covered by property insurance obtained pursuant to this Paragraph 11.4 or other property insurance applicable to the Work....

Finally, paragraph 11.4.5 of the contract further delineates the waiver of Copper's claims for damages as follows:

> If during the Project construction period the Owner insures properties, real or personal or both, at or adjacent to the site by property insurance under policies separate from those insuring the Project, or if after final payment property insurance is to be provided on the completed Project through a policy or policies other than those insuring the Project during the construction period, the Owner shall waive all rights in accordance with the terms of Subparagraph 11.4.7 for damages caused by fire or other causes of loss covered by this separate property insurance.

Copper chose to comply with paragraph 11.4.1 by adding a "Newly Acquired Property and Property Under Construction" endorsement to its general Ski Areas Property Coverage ("SAPC") insurance policy, rather than by purchasing a separate insurance policy to cover the Work.[8] The SAPC policy insured the Work and the Union Creek Lodge, and provided general liability and property insurance for all of the North American resorts owned by Copper's parent company, Intrawest, Inc., including Copper Mountain Resort.

On November 26, 2001, while Industrial was performing welding work, a fire broke out at the Union Creek Lodge. The fire caused significant damage to the existing lodge and its contents. All real and personal property damaged in the fire was covered under the SAPC insurance policy, though Copper was responsible for paying the policy's $1 million deductible.

Copper sued Amako and Industrial in the District Court for Summit County for negligence, negligent supervision, breach of contract, and indemnification, seeking approximately $1 million in damages. Amako and Industrial asserted that paragraphs 11.4.7 and 11.4.5 of the contract barred Copper's suit.

Copper moved the trial court for a determination that paragraph 11.4.7 does not bar claims for damages to property other than the Work.[9] The trial court denied Copper's motion, and granted Amako's and Industrial's cross-motions for summary judgment. The trial court held that paragraphs 11.4.5 and 11.4.7 of the contract barred Copper from recovering for damages suffered in the fire. The trial court distinguished and declined to apply *Silverton*.[10] It stated that the

---

8. It is not unusual for a property owner with existing property insurance to decide to add contractual work to its existing policy. "While the AIA language references a 'builder's risk' form, it does permit this coverage to be provided under an equivalent policy form. Large owners with a significant property coverage program in place often find that it is easier to meet this insurance requirement through modifying their current program to list the project and add the necessary clauses to cover the other parties with insurable interests in the project." 2 Philip L. Bruner & Patrick J. O'Connor, Jr., *Bruner & O'Connor on Construction Law* § 5:220 (2002).

9. Copper alleged that the Union Creek Lodge was non-Work property because it was not "construction and services required by the Contract Documents," but rather was a "structure" adjacent to the site "not designated for removal, relocation or replacement in the course of construction," pursuant to paragraph 10.2.1.3 of the contract. Amako and Industrial argued that the lodge fell within the scope of the Work because Amako performed extensive work throughout the lodge. The question of whether the lodge was Work or non-Work property is not currently before us.

10. The trial court distinguished *Silverton* in part on the grounds that the Work could be segregat-

"exhaustive judicial inquiry" into the scope of Work demanded by *Silverton* would subvert the purposes of the waiver clause—that is, to promote certainty as to liability, limit interruptions to work, reduce litigation, and cover property damage claims under the owner's all-risk builder's policy.

The court of appeals affirmed the trial court's judgment. *Copper Mountain,* No. 06CA0560, op. at 696. It disagreed with *Silverton,* holding that paragraph 11.4.7 applied to all damaged property covered under Copper's SAPC policy. *Id.* at 696–97. The court of appeals gave three reasons for its decision:

> First, the general waiver clause "waive[d] all rights against [contractors] ... for damages caused by fire ... *to the extent covered* by *insurance* obtained pursuant to this Paragraph 11.4 or other property insurance *applicable to the Work.*" (Emphasis added.) The emphasized language does not define waived claims by what property is harmed, that is, the work, but by the policy of insurance "applicable to the Work" that pays for the damage.
>
> Second, paragraph 11.4.1 of the contract states the requirements for obtaining property insurance that is applicable to the work. *"Unless otherwise provided,"* Copper was to purchase an " 'all risk' or equivalent policy" to protect its, Amako's, and Industrial's interests in the work. Thus, Copper could have purchased an all-risk policy limited to the work to satisfy its obligations under the contract, or, as it chose to do, it could have relied on its existing SAPC policy.
>
> Third, other clauses in the contract show the parties intended to waive claims for damages beyond those defined by the work. Paragraph 11.4.5 provides that, if Copper insured property separate from the project that was located "at or adjacent to the site," claims for damages to that property would also be waived.

*Id.* at 696 (internal citations omitted). The court of appeals did not further explain this reasoning or the significance it ascribed to

cd from non-Work more easily in *Silverton* than

Copper's decision to rely on its existing SAPC policy.

The court of appeals also stated:

> Although the trial court based its analysis on paragraph 11.4.5, which extends the waiver to *insurance policies separate from that insuring the work,* Copper stated in its C.R.C.P. 56(h) motion for determination of a matter of law that it satisfied its obligation to insure the work under an endorsement to its SAPC policy, and that this policy covered Union Creek Lodge. Thus, because the SAPC was the policy Copper relied on to insure the work, and because that policy covered all the property damaged by the fire, we need not consider whether paragraph 11.4.5 applies.

*Id.* at 696 (emphasis added). The court of appeals appears to have meant that paragraph 11.4.5 is not relevant because the SAPC policy *did* insure the Work, and therefore was not "separate from that insuring the work."

## II.

We hold that the contract does not bar Copper's claims against Amako and Industrial for damages to property that was not part of the contractual Work, despite the fact that Copper insured the damaged property under an existing policy covering the Work.

### A. Standard of Review

We review a trial court's grant of summary judgment de novo. *Friedland v. Travelers Indem. Co.,* 105 P.3d 639, 643 (Colo.2005). A trial court should grant a motion for summary judgment only if there are no disputed issues of material fact and if the moving party is entitled to judgment as a matter of law. *Id.;* C.R.C.P. 56. The non-moving party is entitled to have the trial court apply any favorable inferences that may reasonably be drawn from the facts. *Friedland,* 105 P.3d at 643. Any doubts must be resolved against the moving party. *Id.*

Contract interpretation is a question of law for the court to decide. *Pepcol Mfg. Co. v. Denver Union Corp.,* 687 P.2d

in this case.

1310, 1313 (Colo.1984). While we typically defer to a trial court's factual findings, we review matters of contract interpretation de novo. *People v. Alameno*, 193 P.3d 830, 834 (Colo.2008); *Fibreglas Fabricators, Inc. v. Kylberg*, 799 P.2d 371, 374 (Colo.1990). The primary goal of contract interpretation is to determine and effectuate the intent and reasonable expectations of the parties. *Thompson v. Md. Cas. Co.*, 84 P.3d 496, 503 (Colo. 2004).

 To determine the intent of the parties, the court should give effect to the plain and generally accepted meaning of the contractual language. *E. Ridge of Fort Collins, LLC v. Larimer and Weld Irrigation Co.*, 109 P.3d 969, 974 (Colo.2005); *Allen v. Pacheco*, 71 P.3d 375, 378 (Colo.2003). The court should interpret a contract "in its entirety with the end in view of seeking to harmonize and to give effect to all provisions so that none will be rendered meaningless." *Pepcol Mfg.*, 687 P.2d at 1313. The court should ascertain the meaning of the contract by examining "the entire instrument and not by viewing clauses or phrases in isolation." *U.S. Fidelity & Guar. Co. v. Budget Rent–A–Car Sys., Inc.*, 842 P.2d 208, 213 (Colo.1992).

## B. Persuasive Precedent

The court of appeals has previously addressed the scope of the waiver clause at issue in *Silverton*, which concerned a similar set of facts. 948 P.2d at 10–11. In that case, the Town of Silverton hired a general contractor to replace the roof of the town hall. *Id.* at 10. The parties executed an AIA contract with clauses paralleling the language of paragraphs 11.4.5 and 11.4.7 in Copper and Amako's contract.[11] *See id.* at 11. The general contractor in *Silverton* hired a subcontractor to install an electric snow melting system in the roof. *Id.* at 10. A

year and a half after completion of the Work, the roof caught fire, damaging the town hall. *Id.* at 11. The town's insurer assigned its rights of subrogation to the town. *Id.* The town then sued the contractor and subcontractor, alleging negligence, breach of warranty, and products liability in connection with the installation of the snow melting system. *Id.* at 10–11. The trial court agreed with the defendants that the town had waived its rights of subrogation, and dismissed the town's complaint. *Id.* at 11.

The court of appeals reversed with respect to the town's claims for damages to non-Work portions of the town hall. *Id.* at 12. The court observed that the Work of the contract was limited to the reroofing of the town hall, and that "[t]he waiver of subrogation provisions placed defendants essentially in the position of co-insureds on the town's property insurance policy only with respect to damages to the work." *Id.* The court held that the parties agreed to exculpate each other from liability for damages to the Work, but not from liability for damages to non-Work. *Id.* The *Silverton* court apparently did not view that contract's analogue to paragraph 11.4.5 as manifesting an intent to restrict claims for damages to non-Work, since the court held that "nothing in the agreement shows an intent to extend this mutual exculpation to parts of the building other than the work." *Id.*

The *Silverton* opinion reached the same result as a number of other jurisdictions. *See Midwestern Indem. Co. v. Sys. Builders, Inc.*, 801 N.E.2d 661, 672–73 (Ind.App.2004) (claim for damages to non-Work property not barred because contractual waiver only applied to claims for damages to Work); *Fid. & Guar. Ins. Co. v. Craig–Wilkinson, Inc.*, 948 F.Supp. 608, 611 (S.D.Miss.1996), *aff'd*, 101

---

11. In *Silverton*, the analogue to paragraph 11.4.7 was identical to paragraph 11.4.7 in the present case, except that it referred to "damages caused by fire or other perils," rather than "damages caused by fire or other causes of loss." 948 P.2d at 11. The *Silverton* opinion specifically addressed the second clause of the analogue to paragraph 11.4.5, which, like paragraph 11.4.5 in the present case, provided:

[I]f after final payment property insurance is to be provided on the completed Project through a policy or policies other than those insuring the Project during the construction period, the Owner shall waive all rights in accordance with the terms of Subparagraph 11.3.7 for damages caused by fire or other perils covered by this separate property insurance.

*Id.* In the present case, paragraph 11.4.5 refers to "damages caused by fire or other causes of loss."

F.3d 699 (5th Cir.1996) (same); *Butler v. Mitchell–Hugeback, Inc.,* 895 S.W.2d 15, 22 (Mo.1995) (waiver provision only extended to the value of the Work); *Pub. Employees Mut. Ins. Co. v. Sellen Constr. Co., Inc.,* 48 Wash.App. 792, 740 P.2d 913, 916 (1987) (same); *see also Travelers Ins. Cos. v. Dickey,* 799 P.2d 625, 631 (Ok.1990) (waiver clause did not exonerate roofing contractor who allegedly damaged owner's interior property).

The analysis of New York's highest court in *S.S.D.W. Co. v. Brisk Waterproofing Co., Inc.,* 76 N.Y.2d 228, 557 N.Y.S.2d 290, 556 N.E.2d 1097 (1990), is particularly persuasive. The court held that the plain meaning of the phrase "to the extent covered by insurance obtained pursuant to this Article or any other property insurance applicable to the Work" was that the waiver only applies to damages to the Work. *Id.,* 557 N.Y.S.2d 290, 556 N.E.2d at 1099–1100. The court stated:

> It makes no difference whether the policy under which subrogation is sought is one which the owner purchased specifically to insure the Work pursuant to [the article requiring the owner to procure property insurance] or some other policy covering the owner's property in which the owner has also provided coverage for the Work. In either event, the waiver clause, if given its plain meaning, bars subrogation only for those damages covered by insurance which the owner has provided to meet the requirement of protecting the contractor's limited interest in the building—i.e., damages to the Work itself.

*Id.,* 557 N.Y.S.2d 290, 556 N.E.2d at 1100. The court found that this interpretation gives "full effect" to the contractual provision requiring the contractor to obtain liability insurance protecting it from claims for damages to non-Work property. *Id.*

As Amako and Industrial note, a number of other jurisdictions have reached a different conclusion: that paragraph 11.4.7 in the AIA contract bars an owner's claims for damages to non-Work property to the extent the owner's insurance policy covering Work also covers the non-Work property. *See, e.g., Lexington Ins. Co. v. Entrex Commc'n Servs., Inc.,* 275 Neb. 702, 749 N.W.2d 124, 134 (2008); *Trinity Universal Ins. Co. v. Bill Cox Constr., Inc.,* 75 S.W.3d 6, 13 (Tex.App. 2001); *Employers Mut. Cas. Co. v. A.C.C.T., Inc.,* 580 N.W.2d 490, 493 (Minn.1998).

## C. Application to this Case

■ The parties do not ask us to resolve whether a waiver provision in this context is valid or supportable. Despite the fact that such clauses are exculpatory in nature, "when the language of the agreement discloses an intent to waive claims, the courts will enforce that agreement." *May Dep't Stores Co. v. Univ. Hills, Inc.,* 789 P.2d 434, 438 (Colo.App.1989). Similarly, the parties do not contest the fact that paragraph 11.4.7 waives Copper's rights to sue for damages to the Work. The issue presented here is only whether Copper waived its right to sue Amako and Industrial for damages to its non-Work property, even though Copper insured that property under an existing policy covering Work property.

Amako and Industrial argue that *Silverton* was incorrectly decided or distinguishable from the current case. They contend that paragraph 11.4.7 waives Copper's rights to the extent damages are covered by Copper's insurance, and that paragraph 11.4.5 further waives claims for damages to the owner's covered property at or near the construction site, without regard to whether that property is Work or non-Work property.

In construing the contract between Copper and Amako, we bear in mind the *Silverton* court's construction of the relevant contractual provisions. Although we are not bound by the court of appeals' holding or reasoning in *Silverton,* as we have not had this question before us until now, we conclude that *Silverton* was correctly decided and sets forth a more persuasive construction of the contract than the more recent court of appeals opinion that we consider in the present case.

■ We conclude that neither paragraph 11.4.7 nor paragraph 11.4.5 bars Copper's claims for damages to its non-Work property. Several aspects of the contract lead to our determination. Most significantly, the plain language of paragraph 11.4.7 does not waive Copper's claims for damages to non-Work

property. Paragraph 11.4.7 provides that the owner and contractor waive their rights against each other for damages caused by fire "to the extent covered by property insurance obtained pursuant to this Paragraph 11.4 or other property insurance applicable to the Work." Both types of property insurance referenced in paragraph 11.4.7 cover the *Work.* "[P]roperty insurance obtained pursuant to this Paragraph 11.4" is the builder's all-risk or equivalent insurance "in the amount of the initial Contract Sum, plus value of subsequent Contract modifications and cost of materials supplied or installed by others...." [12] Similarly, the phrase "other property insurance applicable to the Work" refers to insurance covering the *Work.* Thus, Copper waived its claims for damages to the Work, but did not waive claims for damages to non-Work.

Analysis of contextual provisions in the contract further supports our interpretation of paragraph 11.4.7, because this interpretation gives effect to paragraph .5 of article 11 and to paragraph 10.2.5. *See Budget Rent–A–Car,* 842 P.2d at 213. If paragraph 11.4.7 were intended to operate as a blanket waiver of Copper's claims for damages to its non-Work property, paragraph .5 of article 11 would not require Amako to obtain insurance to cover claims for damages "other than to the Work itself." *See Craig–Wilkinson,* 948 F.Supp. at 614; *Brisk Waterproofing,* 557 N.Y.S.2d 290, 556 N.E.2d at 1100. If paragraph 11.4.7 waived Copper's claims for damages to non-Work property, it would be fruitless for Amako to obtain insurance under paragraph .5 of article 11, because Copper could not pursue claims concerning non-Work property against Amako. Amako's and Industrial's proposed interpretation of the contract would render paragraph .5 of article 11 meaningless, contradicting principles of contract interpretation. *See Pepcol Mfg.,* 687 P.2d at 1313. Paragraph .5 of

article 11 requires the contractor to procure insurance covering liability for claims arising out of the contractor's or subcontractor's operations "for damages, other than to the Work itself, because of injury to or destruction of tangible property, including loss of use resulting therefrom."

Amako's and Industrial's interpretation would also render paragraph 10.2.5 meaningless. Paragraph 10.2.5 obligates Amako to remedy damage, other than that insured under property insurance required by the Contract Documents, that Amako or its subcontractors cause to the Work or other property at or adjacent to the site. The contract only "requires" Copper to insure the Work. A harmonious reading of paragraphs 10.2.5 and 11.4.7 points to the conclusion that Amako is responsible for damages to non-Work, while Copper is responsible for the cost of damages to the Work.

The language of paragraph 11.4.5 does not alter this conclusion. It might appear that this clause expands the scope of the waiver in paragraph 11.4.7 to cover damages to any adjacent property the owner insures, including non-Work property, but a closer reading reveals that this is not the correct interpretation. Rather, paragraph 11.4.5 makes clear that, should the owner purchase additional insurance coverage at or adjacent to the site of the Work either during or after construction, such insurance will be subject to "the terms of Subparagraph 11.4.7." Paragraph 11.4.5 provides that if, *"during the Project construction period,"* the owner insures properties "at or adjacent to the site by property insurance under policies *separate from those insuring the Project,"* the owner waives rights "in accordance with the terms of Subparagraph 11.4.7 for damages caused by fire ... covered by this separate property insurance." [13] (Emphasis added).

In this case, the record shows that Copper obtained insurance for the Work through an

**12.** Paragraph 11.4 also requires the owner to procure boiler and machinery insurance that shall include the parties' interests in the Work; permits the owner to procure loss of use insurance; and directs the owner to procure insurance for risks other than those described in paragraph 11.4, if the contractor so requests, and at the contractor's expense.

**13.** The temporal focus of paragraph 11.4.5 also is evidenced in the second clause of that paragraph, which waives certain claims regarding the *"completed* Project" if *"after* final payment" the owner obtains insurance policies separate from those insuring the Project during the construction period. (Emphasis added).

endorsement to its general SAPC policy. The trial court found that "it is clear that all fire damage to the Lodge was covered by the same pre-existing SAPC, albeit possibly by different provisions within that one policy. The Court finds there is no evidence suggesting [Copper] attempted to obtain separate insurance for the Work." *See Martinez v. Hawkeye–Security Ins. Co.*, 195 Colo. 184, 187, 576 P.2d 1017, 1019 (1978) (insurance policy and attached endorsement are to be considered a single instrument). Paragraph 11.4.5 does not apply here, because Copper's insurance covering non-Work was not "separate" and was not procured "during the Project construction period."

Furthermore, paragraph 11.4.5 is limited by the terms of paragraph 11.4.7, because it states that "the Owner shall waive all rights *in accordance with* the terms of Subparagraph 11.4.7...." (Emphasis added). Instead of expanding the scope of paragraph 11.4.7, paragraph 11.4.5 clarifies what type of insurance will be subject to the waiver in paragraph 11.4.7. Specifically, the purpose of paragraph 11.4.5 is to clarify that if, subsequent to the execution of the contract and during the construction period, the owner acquires additional insurance under separate policies for properties at or adjacent to the site that have been added to the Project, the owner waives rights to the extent of that insurance.

The purpose of paragraph 11.4.5 cannot be to waive the owner's rights to sue for damages to non-Work, because that interpretation would render paragraph 11.4.5 inconsistent with paragraph 11.4.7, which only waives the owner's rights to sue for damages to Work. Under such an interpretation, the more limited waiver in paragraph 11.4.7 would be superceded by the broader waiver of paragraph 11.4.5, and paragraph 11.4.7 would be superfluous. We choose a construction of the contract that harmonizes provisions instead of rendering them superfluous. *See Pepcol Mfg. Co.*, 687 P.2d at 1313. If the intent of the contract were to

waive all claims to the non-Work to the extent covered by Copper's insurance, the contract could have stated this explicitly. It is significant that the contract did not do so.

Our interpretation harmonizing paragraphs 11.4.7 and 11.4.5 effectuates the contract's purpose. Like other AIA Owner–Contractor Agreements, this contract represents a nuanced and intertwined set of agreements between commercial entities about how to allocate risks and responsibilities concerning the possibility of property damage. *See Brisk Waterproofing*, 557 N.Y.S.2d at 290, 556 N.E.2d at 1099. In this contract, the parties settled on a risk allocation scheme under which Amako would procure liability insurance for and remedy damages to non-Work, while Copper insured the Work. *See id.* at 290, 556 N.E.2d at 1100 (requiring owner's insurer to bear responsibility for damages to non-Work would not be "consistent with either the natural and obvious meaning of [the waiver provision] or with what seems to be the over-all sense of the arrangement [in the article governing insurance]—that the contractor is to be responsible for negligently caused damage outside the Work and must carry a policy insuring its liability therefor ...").[14]

Amako's and Industrial's proposed interpretation of the contract would benefit owners who fail to insure their non-Work property by allowing those owners to pursue claims for damages to non-Work property, and would penalize owners who insure non-Work property by disallowing many claims by such owners. Our construction of the contract, like the *Silverton* court's construction, avoids penalizing owners who procure property insurance. *Silverton's* contract construction accords with ordinary principles of liability under which an actor is responsible to a property owner for property damages it negligently causes, absent a clear intent appearing otherwise in the parties' agreement. We choose to follow such a construction here.

### III.

Accordingly, we reverse the court of appeals' decision and remand this case for fur-

---

**14.** Given the parties' careful allocation of risk of the contractor's negligent harm to non-Work property to the contractor, we do not conclude that the parties intended to reverse this allocation of risk. Faced with two readings of a contract, we choose the one that harmonizes interrelated contract provisions.

ther proceedings in the trial court consistent with this opinion.

Justice MARTINEZ dissents, and Justice COATS joins in the dissent.

Justice MARTINEZ, dissenting.

In contrast to the majority, I would find the contractual provisions in question bar Copper Mountain, Inc. ("Copper") from recovering for damages to both the contractual Work and non-Work property.[1]

The waiver provisions at issue here—paragraphs 11.4.7 and 11.4.5 of the standard American Institute of Architects ("AIA") contract—have been interpreted by a majority of jurisdictions as barring an owner's claims for damage to non-Work property to the extent the owner's insurance policy covering the Work also covers the non-Work property. *See, e.g., Rahr Malting Co. v. Climatic Control Co., Inc.,* 150 F.3d 835 (8th Cir.1998); *American Ins. Co. v. L.H. Sowles Co.,* 628 F.2d 967, 968–69 (6th Cir.1980); *ASIC II Ltd. v. Stonhard, Inc.,* 63 F.Supp.2d 85 (D.Me.1999); *Employers Mut. Cas. Co. v. A.C.C.T.,* 580 N.W.2d 490 (Minn.1998); *Trinity Universal Ins. Co. v. Bill Cox Constr., Inc.,* 75 S.W.3d 6, 14 (Tex.App.2001). Similarly, a majority of the courts examining such provisions have held that the waived claims are defined by the source of the insurance proceeds paying for the damage, not by whether Work or non-Work property was damaged. *See, e.g., Commercial Union Ins. Co. v. Bituminous Casualty Corp.,* 851 F.2d 98 (3d Cir.1988); *Tokio Marine & Fire Ins. Co. Ltd. v. Employers Ins. of Wausau,* 786 F.2d 101, 105 (2d Cir.1986); *ASIC II,* 63 F.Supp.2d 85; *Stop and Shop Supermarket Co. v. ABCO Refrigeration Supply Corp.,* 48 Conn.Supp. 301, 842 A.2d 1194, 1198–99 (2003) (holding the intent of similar waiver clauses was to create a "universal waiver" of all claims for damages which are covered by insurance); *Lexington Ins. Co. v. Entrex Commc'n Servs., Inc.,* 275 Neb. 702, 749 N.W.2d 124, 133 (2008) (stating the majority of jurisdictions have concluded that provisions identical to paragraphs 11.4.5 and 11.4.7 apply to all damages insured by the owner's property insurance policy, regardless of whether they represent damages to Work or non-Work property).

Paragraph 11.4.1 gave Copper the option to purchase and maintain "property insurance written on a builder's risk 'all-risk' or equivalent policy form" in an amount comprising the "total value for the entire Project at the site on a replacement cost basis." If Copper did not purchase a new all-risk policy to cover the Work under paragraph 11.4.1, it could rely on its all-purpose Ski Area Property Coverage ("SAPC") insurance policy. The SAPC policy covered claims by Intrawest, Copper's parent company, and its resorts for damage to properties that were already constructed at the time the policy was issued. In addition, a "Newly Acquired Property and Property Under Construction" endorsement to the SAPC policy allowed Intrawest and its resorts to obtain coverage for construction projects if the construction work to be performed was valued at less than $1 million. Instead of purchasing a new all-risk policy to cover the Work, Copper relied on its existing SAPC policy. This policy, plus the endorsement, insured all of Intrawest's property, including the Work and Union Creek Lodge—the structure at which the Work was performed.

Paragraph 11.4.7 states Copper and Amako Resort Construction, Inc. ("Amako") agree to "waive all rights against each other and any of their subcontractors ... for damages caused by fire or other causes of loss to the extent covered by property insurance obtained pursuant to this Paragraph 11.4 or other property insurance applicable to the Work...." Paragraph 11.4.5 states if, during the Project construction period, Copper insures property, "real or personal or both, at or adjacent to the site by property insurance under policies separate from those insuring the Project," Copper "shall waive all rights in accordance with the terms of Subparagraph 11.4.7 for damages caused by fire or other

---

1. The contract between Copper Mountain and Amako Resort Construction, Inc. defined the work to be performed as:

The term "Work" means the construction and services required by the Contract Documents, whether completed or partially completed, and includes all labor, materials, equipment and services provided or to be provided by [Amako] to fulfill [Amako's] obligations. The Work may constitute the whole or a part of the Project.

causes of loss covered by the separate property insurance."

Copper had the option of purchasing a new policy specifically covering the Work or relying on existing property insurance to cover the Work. The waiver clauses contained in paragraphs 11.4.5 and 11.4.7 create the Work/non–Work distinction based upon the owner's decision to purchase a new policy or to rely upon an existing one. Paragraph 11.4.7 states Copper "waive[d] all rights against [contractors] ... for damages caused by fire ... *to the extent covered by insurance obtained pursuant to this Paragraph 11.4 or other property insurance* applicable to the Work." (Emphasis added.) This language does not define waived claims by what property is harmed, but rather by the policy of insurance applicable to the Work that pays for the damage. Under the waiver provisions, Copper agreed to waive the right to sue for damages to the Work if it purchased a separate policy specifically covering the Work. However, if Copper instead relied on an existing policy covering both Work and non-Work property, it waived the right to sue for any damages to property covered by the policy.

Instead of purchasing a new all-risk policy, Copper chose to rely on its existing SAPC policy. As such, Copper "waive[d] all rights against [Amako and Industrial Services, Inc.] ... for damages caused by fire." Therefore, Copper cannot recover against Amako and Industrial Services Inc. for damages caused by the fire to *either* Work or non-Work property. However, if Copper had purchased a new all-risk policy to cover the Work instead of relying on its existing SAPC policy, Copper would be able to recover for damages caused to non-Work property. I believe this interpretation of the waiver provisions is more consistent with the plain language of the contract than the majority's interpretation.

Accordingly, I respectfully dissent.

I am authorized to state Justice COATS joins in this dissent.