FILED
United States Court of Appeals
Tenth Circuit

April 25, 2011

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MICHAEL ROSENZWEIG,

    Plaintiff - Appellant,

v.

JOHNS MANVILLE,

    Defendant - Appellee.

No. 10-1267
(D.C. No. 09-CV-01585-RPM)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **SEYMOUR**, and **HOLMES**, Circuit Judges.

Plaintiff-Appellant Michael Rosenzweig appeals from the district court's

grant of summary judgment in favor of Defendant-Appellee Johns Manville

("JM").  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

Background

Mr. Rosenzweig was hired as the Senior Vice President, Corporate

Development and General Counsel for JM in September 2005.  Aplt. App. at 344.

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

Under the terms of his employment agreement ("Employment Agreement") with JM, Mr. Rosenzweig was entitled to participate in two incentive bonus programs—JM's Annual Incentive Plan ("AIP," sometimes referred to as the Variable Incentive Plan) and JM's Long Term Incentive Plan ("LTIP"). Id. at 344-46, 847. In addition, the Employment Agreement provided that if terminated without cause, he was entitled to receive severance pay in the amount of one year's pay and an amount equal to his targeted benefit under the AIP. Id. at 345.

The AIP and LTIP provided incentive payments to employees if JM met certain objectives over a one-year period and three-year period, respectively. Id. at 284-91. To receive benefits under either plan, the employee must have been an active employee on the last day of the incentive year (for the AIP) or last day of the three-year period (for the LTIP). Id. at 284, 288-89. An employee who was terminated before the last day of the incentive year or three-year period could receive pro-rata benefits if separation occurred "under circumstances entitling [the employee] to separation pay under the Company's separation policy." Id. at 284, 290 (emphasis added). The current dispute centers on what constituted JM's "separation policy."

Effective July 1, 1997, JM adopted a Separation Pay Plan for Salaried Employees ("1997 SPP"), an employee welfare benefit plan under the Employee Retirement Income Security Act ("ERISA"). Id. at 292-311. JM's Policy Statement 126, a one-page document entitled "Separation" which "defines and

clarifies the [JM] separation policy" also became effective in July 1997. Id. at 312. The 1997 SPP provided that "[i]n the event any discrepancies exist between this document and the [JM] Separation Policy, the order of governance shall be as follows: any Amendment, this document, and last, the policy." Id. at 295. Effective February 15, 2006, JM adopted a new Separation Pay Plan for Salaried Employees ("2006 SPP"), which "supercedes all prior separation pay plans of [JM]." Id. at 316. The 2006 SPP excludes any employee who "is entitled to receive severance pay under an employment agreement to which [JM] is a party." Id. at 319.

Mr. Rosenzweig was terminated from JM on August 31, 2007. Id. at 655. On September 9, 2007, he made a request via email for one year's base salary plus an amount equivalent to his targeted AIP amount, pursuant to his Employment Agreement. Id. at 365. In response, JM paid him $514,800.00—a combination of $312,000.00, his annual salary, and $212,800.00, the amount equivalent to his targeted benefit under AIP. Id. at 282, 847.

On October 10, 2007, Mr. Rosenzweig made a separate request for post-termination benefits under the AIP and LTIP. Id. at 370, 372. JM denied this request on December 14, 2007. Id. at 370-73. Mr. Rosenzweig appealed the denial of AIP and LTIP benefits on March 20, 2008, and JM rejected the appeal on June 19, 2008. Id. at 387-99. Mr. Rosenzweig sought reconsideration on September 24, 2008, but the denial was upheld on December 3, 2008. Id. at 402-

- 3 -

12. On April 27, 2009, Mr. Rosenzweig filed the current diversity action against JM in federal district court in the northern district of Georgia, alleging breach of contract and violation of the Colorado Wage Act, and seeking pro-rated benefits under the AIP and LTIP. Id. at 9-25. On JM's motion, the action was transferred to the Colorado federal district court on July 2, 2009. Aplee. Br. at 3.

In an attempt to obtain evidence regarding JM's previous interpretation of the phrase "the Company's separation policy," Mr. Rosenzweig served JM with a discovery request to obtain information regarding AIP and LTIP payments made to other fired executives. Id. at 50, 65, 71-72. JM objected to these requests, and Mr. Rosenzweig filed a motion to compel on February 11, 2010. Id. at 45-47. Before the court ruled on the motion to compel, both parties filed motions for summary judgment. Id. at 186-231, 258-412. The court then denied the motion to compel, stating that it wished to rule on the summary judgment issues first. Id. at 422; Aplee. Supp. App. at 12. After the court denied the motion to compel, Mr. Rosenzweig requested, in his response to JM's motion for summary judgment, that he be allowed to obtain the evidence of JM's past practice of determining AIP and LTIP bonus payments pursuant to Fed. R. Civ. P. 56(d).[1] Aplt. App. at 460-61 n.5.

---

[1]Mr. Rosenzweig made the request pursuant to Fed. R. Civ. P. 56(f), but we address the argument under the current Fed. R. Civ. P. 56(d), which "carries forward without substantial change the provisions of the former section (f)." Fed. R. Civ. P. 56 advisory committee's note.

On May 26, 2010, the district court heard oral argument on the parties' cross motions for summary judgment and granted judgment in favor of JM. Id. at 878-916. The court concluded that the 2006 SPP was the "separation policy" at the time of Mr. Rosenzweig's termination and that the AIP and LTIP "simply are not applicable to [Mr. Rosenzweig]" because "[h]e had his own deal." Id. at 913-14. Mr. Rosenzweig timely appealed, arguing that the district court erred in granting summary judgment in favor of JM on the breach of contract and Colorado Wage Act claims and in denying him the opportunity to obtain discovery on how JM interpreted the AIP and LTIP documents. Aplt. Br. at iii-iv.

We review the district court's grant of summary judgment de novo, applying the same standard as the district court. Thomas v. Metro. Life Ins. Co., 631 F.3d 1153, 1160 (10th Cir. 2011) (citation omitted). We view the evidence and its reasonable inferences in the light most favorable to the non-movant. Id. Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

"When exercising diversity jurisdiction, we apply state law with the objective of obtaining the result that would be reached in state court." Butt v. Bank of America, N.A., 477 F.3d 1171, 1179 (10th Cir. 2007) (citation omitted). Both parties agree that the Employment Agreement should be interpreted under Colorado law. See Aplt. Br. at 23; Aplee. Br. at 17. Under Colorado law, "[t]he

primary goal of contract interpretation is to determine and effectuate the intent and reasonable expectations of the parties." Copper Mountain, Inc. v. Indus. Sys., Inc., 208 P.3d 692, 697 (Colo. 2009) (citation omitted).

Discussion

A.    JM's "Separation Policy" at the Time of Mr. Rosenzweig's Termination

Mr. Rosenzweig is entitled to the pro-rated AIP and LTIP benefits if he was entitled to separation pay under "the Company's separation policy" at the time of his termination. Mr. Rosenzweig contends that Policy Statement 126 was the governing "separation policy" and that he is entitled to separation pay under Policy Statement 126. Aplt. Br. at 26-32. JM argues that the district court correctly held that the 2006 SPP was the governing "separation policy" and that Mr. Rosenzweig is not entitled to separation pay under the 2006 SPP. Aplee. Br. at 13-14.

While Policy Statement 126 states that it "defines and clarifies the [JM] separation policy," that document is clearly subordinate to the 1997 SPP, and both documents were superceded by the 2006 SPP. Policy Statement 126 and the 1997 SPP reference one another and must be read in conjunction—Policy Statement 126 provides that "the specific details of administration are outlined in the separation plan document," referring to the 1997 SPP, and the 1997 SPP states that "[t]he following provisions constitute the [JM] Separation Pay Plan as

- 6 -

outlined in the [JM] Separation Policy for Salaried Employees," referring to Policy Statement 126. Aplt. App. at 295, 312. Most importantly, the 1997 SPP expressly states that "[i]n the event any discrepancies exist between this document and the [JM] Separation Policy, the order of governance shall be as follows: any Amendment, this document, and last, the policy." Id. at 295. In 2006, JM amended the 1997 SPP with the 2006 SPP. Thus, the 2006 SPP supercedes the 1997 SPP under the 1997 SPP's own terms. Further, the 2006 SPP states that it "supercedes all prior separation pay plans of [JM]." Id. at 316. Thus, the 2006 SPP superceded the 1997 SPP. Because the 1997 SPP and the Policy Statement are to be read in conjunction, both were superceded by the 2006 SPP.

Even if Policy Statement 126 can be read separately from the 1997 SPP, it is expressly superceded by § 7.05 of the 2006 SPP. That section provides that the 2006 SPP "supercedes all other severance . . . policies covering benefits to be received upon involuntary termination . . . of Employees resulting from force reductions or surplus within the Company." Id. at 333-34. Policy Statement 126 allows for separation pay for individuals involuntarily separated because of, among other things, workforce reduction. Id. at 312. Therefore, even if Policy Statement 126 is a separate policy, it was superceded by the 2006 SPP.

Having concluded that at the time of Mr. Rosenzweig's termination, the "separation policy" unambiguously referred to the 2006 SPP, we now look to the

2006 SPP to determine whether he was entitled to pay under that policy. The 2006 SPP excludes any employee who "is entitled to receive severance pay under an employment agreement to which [JM] is a party." Id. at 319. Because Mr. Rosenzweig was entitled to receive severance pay under his Employment Agreement with JM—which he has received—he is not entitled to separation pay under the 2006 SPP, and therefore is not entitled receive benefits under the AIP or LTIP. Because there is there is no genuine dispute as to any material fact and JM is entitled to judgment as a matter of law, the district court properly granted summary judgment in favor of JM on the breach of contract and Colorado Wage Act claims.

We do not address Mr. Rosenzweig's argument that the district court's conclusion amounts to an impermissible forfeiture of his right to AIP and LTIP payments under Colorado law because Mr. Rosenzweig did not raise this argument before the district court, and he does not argue for plain error review here. See McKissick v. Yuen, 618 F.3d 1177, 1189 (10th Cir. 2010). While Mr. Rosenzweig did use the word "forfeit" in his brief in support of summary judgment before the district court, it was in the context of an entirely different argument. See Aplt. App. at 202-03, 204. Because he did not make the same argument before the district court, we will not consider it now. See Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co., 497 F.3d 1135, 1141-42 (10th Cir. 2007) (citations omitted).

In addition, we note that Mr. Rosenzweig's contention that the district court decided the case on a novel ground that neither party argued is not supported by the record. The district court held that the AIP and LTIP "simply are not applicable to [Mr. Rosenzweig]" because "[h]e had his own deal." Aplt. App. at 913. To clarify its holding, the court explained that the 2006 SPP was the "separation policy" in effect at the time of Mr. Rosenzweig's termination. Id. at 913-14. In other words, the court held that Mr. Rosenzweig was not entitled to AIP and LTIP benefits because the 2006 SPP was the separation policy in effect at the time of his termination, and an individual was not entitled to separation pay under the 2006 SPP if, like Mr. Rosenzweig, he was "entitled to receive severance pay under an employment agreement to which [JM] is a party" (i.e., "had his own deal"). JM made this exact argument before the district court. Id. at 273-76.

B.      Motion to Compel

Mr. Rosenzweig also argues that it was error for the district court to deny his motion to compel, and relatedly, his Fed. R. Civ. P. 56(d) discovery request to obtain evidence of JM's past practices concerning AIP and LTIP benefits. Aplt. Br. at 33-35. We review discovery rulings, including rulings on Rule 56(d) requests, for an abuse of discretion. Soc'y of Lloyd's v. Reinhart, 402 F.3d 982, 1001 (10th Cir. 2005) (citations omitted); Valley Forge Ins. Co. v. Health Care Mgmt. Partners, Ltd., 616 F.3d 1086, 1096 (10th Cir. 2010) (citation omitted).

Under Colorado law, "'in the absence of an ambiguity a written contract

cannot be varied by extrinsic evidence.'" Level 3 Commc'ns, LLC v. Leibert Corp., 535 F.3d 1146, 1154 (10th Cir. 2008) (quoting Pepcol Mfg. Co. v. Denver Union Corp., 687 P.2d 1310, 1314 (Colo. 1984)). Because we conclude that the phrase "separation policy," as used in the AIP and LTIP unambiguously referred to the 2006 SPP, there is no need for additional evidence. Thus, the district court did not abuse its discretion in denying Mr. Rosenzweig's motion to compel and Rule 56(d) discovery request.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge