FILED
United States Court of Appeals
Tenth Circuit

January 4, 2017

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

TCR SPORTS BROADCASTING
HOLDING, LLP, d/b/a Mid-Atlantic
Sports Network,

     Plaintiff - Appellant,

v.

CABLE AUDIT ASSOCIATES, INC.,
d/b/a Media Audits International,

     Defendant - Appellee.

No. 16-1143
(D.C. No. 1:13-CV-01803-CMA-CBS)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **PHILLIPS** and **McHUGH**, Circuit Judges.
_____

In this contract dispute, TCR Sports Broadcasting Holding, LLP, d/b/a

Mid-Atlantic Sports Network (MASN) appeals the entry of summary judgment in

favor of Cable Audit Associates, Inc., d/b/a Media Audits International (MAI), as

well as the orders denying MASN's motion to alter or amend the judgment and

awarding costs to MAI.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. Background

MASN is a regional sports network that provides programming—primarily Major League Baseball games of the Baltimore Orioles and the Washington Nationals teams and related content—to several distributors, who make the content available to their subscribers. The distributors are contractually obligated to pay MASN a monthly fee for each subscriber receiving the MASN service, which consists of two channels, MASN1 and MASN2, due to the fact that the teams sometimes play simultaneously. By contract, the distributors are required to provide both channels as a package; they cannot provide one without the other.

MASN entered into a series of agreements with MAI to audit and verify the monthly subscriber counts provided by the distributors. The agreements obligate MAI "to carefully and accurately verify the number of Residential and Commercial Subscribers receiving the MASN service" from each distributor. Aplt. App., Vol. 3 at 377. MASN compared MAI's audit reports with the subscriber counts provided by the distributors and then worked with the distributors to resolve any discrepancies. A problem arose when MASN learned that some distributors were providing some subscribers with access to MASN2 only, yet MAI's audits were conducted by counting solely subscribers receiving MASN1. MAI agreed to re-audit some of the subscriber counts, but MASN was unsuccessful at collecting some of the subscriber fees it believed it was entitled to receive from distributors who had breached their obligation to provide both channels as a package. MASN then sued MAI for breach

2

of contract based on the theory that their audit reports were incomplete, causing MASN to forego fees that it was entitled to receive.

MAI moved for summary judgment, arguing that it had fulfilled its obligations under the audit agreements. The agreements required MAI to obtain counts for "the MASN service." *Id.* Although that term is not defined in the agreements, the parties agree it consists of both channels. MAI concedes that it counted only subscribers receiving MASN1, operating on the assumption that those counts would accurately reflect the number of subscribers receiving the MASN service. Its audit reports were based on those counts. Since distributors were contractually required to provide access to both channels without offering them separately, MAI argued that it had no reason to audit both channels. MASN argued that this method of auditing undermined the purpose of the audit agreements to such a degree that MAI breached the agreements since MASN expected to be paid whenever its content was distributed.

The district court ruled in favor of MAI:

> [A]t the time the parties signed the Audit Agreements, it was their intent that [MAI] verify the subscribers receiving the MASN Service, which consists of both MASN1 and MASN2. As such, [MAI] was not contractually obligated to verify the subscribers who received only MASN2 and [MAI] did not breach the contracts.

Aplt. App., Vol. 5 at 999. The district court denied MASN's motion to alter or amend the judgment and awarded MAI $21,534.91 in costs.

3

## II. Analysis

MASN argues that the district court erred (1) by granting summary judgment because material facts are in dispute as to the scope of MAI's obligations under the agreements and whether MAI fulfilled those obligations; (2) by applying the wrong standard in analyzing the motion to alter or amend the judgment; and (3) by awarding MAI costs associated with obtaining video depositions.

## A. Summary Judgment

We review de novo a district court's grant of summary judgment. *Gol TV, Inc. v. EchoStar Satellite Corp.*, 692 F.3d 1052, 1055 (10th Cir. 2012). "Summary judgment is appropriate when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Larry Snyder & Co. v. Miller*, 648 F.3d 1156, 1159 (10th Cir. 2011) (quoting Fed. R. Civ. P. 56(a)).

We also review de novo the interpretation of a contract. *Cellport Sys., Inc. v. Peiker Acustic GMBH & Co. KG*, 762 F.3d 1016, 1022 (10th Cir. 2014). The parties agree that Colorado law governs our interpretation of the audit agreements. Under Colorado law, "a contract must be construed to ascertain and effectuate the intent of the parties as determined primarily from the language of the contract." *E. Ridge of Fort Collins, LLC v. Larimer & Weld Irrig. Co.*, 109 P.3d 969, 974 (Colo. 2005). "To determine the intent of the parties, the court should give effect to the plain and generally accepted meaning of the contractual language." *Copper Mountain, Inc. v. Indus. Sys., Inc.*, 208 P.3d 692, 697 (Colo. 2009). "[A] contract is ambiguous if it is fairly susceptible to more than one interpretation," but "[m]ere disagreement" on how

4

to interpret a contract does not render it ambiguous. *E. Ridge*, 109 P.3d at 974 (internal quotation marks omitted).

The gist of MASN's contract claim is that MAI breached the agreements by not obtaining subscriber counts for MASN2. But no specific term in the agreements imposes such a requirement. With one minor exception not relevant here, the agreements do not even mention MASN2. Although MASN now takes the position that the agreements' purpose was to provide it with subscriber counts for each channel, the plain language of the audit agreements does not compel such an interpretation.

Due to the lack of an express provision in the agreements to support its position, MASN argues that by failing to audit MASN2, MAI did not fulfill the overall purpose of the agreements, which was to inform MASN when it was entitled to additional fees from the distributors. We do not agree that MASN can paint MAI's obligations under the agreements with such a broad brush. In the absence of an express requirement to count subscribers receiving each channel, MAI's approach was a valid means of assessing the number of subscribers receiving the MASN service. Nor can MASN show that when the parties entered the agreements, they intended for the channels to be counted separately. MASN admits that it did not know some subscribers were receiving only MASN2 until years after it began contracting with MAI. We decline to interpret the agreements to mean that MASN intended for MAI to count a category of subscribers that neither party knew existed when they entered into the agreements.

MASN also argues that MAI was required to audit subscribers receiving only MASN2 to meet its obligation to report "MASN Level of carriage and channel number for the MASN service." Aplt. App., Vol. 3 at 372. But if the intent of the parties were for MAI to audit more than one channel, the words "level" and "number" would not be singular in this provision of the audit agreements. Moreover, MAI produced audit reports for MASN for several years before MASN brought this suit. Again, if the intent behind the agreements were for MAI to provide two sets of numbers for carriage levels and channel numbers, this issue would have arisen sooner.

We conclude that the district court did not err in interpreting the audit agreements or by concluding that the undisputed facts show that MAI did not breach its obligations.

## B. Motion to Alter or Amend

MASN filed a motion to alter or amend the judgment under Fed. R. Civ. P. 59(e). The district court found the motion to be untimely under that rule, and, treating it as a motion brought under Fed. R. Civ. P. 60(b), denied it. MASN argues that, analyzed under the proper standard for a Rule 59(e) motion, it should not have been dismissed.

"We review a district court's ruling on a Fed. R. Civ. P. 59(e) motion under an abuse of discretion standard." *Phelps v. Hamilton*, 122 F.3d 1309, 1324 (10th Cir. 1997). Such a motion "should be granted only to correct manifest errors of law or to present newly discovered evidence." *Id.* (internal quotation marks omitted). In

6

support of its motion, MASN made substantially the same arguments that we rejected in the previous section of this order and judgment. Therefore, we conclude that MASN has not made the required showing of manifest error and that the district court did not abuse its discretion in denying the motion. *See Elkins v. Comfort*, 392 F.3d 1159, 1162 (10th Cir. 2004) ("We have discretion to affirm on any ground adequately supported by the record.").

## C. Costs

MASN argues that the district court erred by awarding MAI certain costs associated with obtaining videotaped depositions. We review costs awards only for an abuse of the court's discretion. *In re Williams Sec. Litig.—WCG Subclass*, 558 F.3d 1144, 1148 (10th Cir. 2009).

"Fees for printed or electronically recorded transcripts necessarily obtained for use in the case" may be taxed pursuant to 28 U.S.C. § 1920(2). We have held that "section 1920(2) implicitly permits taxation of the costs of video depositions." *Tilton v. Capital Cities/ABC, Inc.*, 115 F.3d 1471, 1477 (10th Cir. 1997). Moreover, "in most cases, a stenographic transcript of a videotaped deposition will be 'necessarily obtained for use in the case.'" *Id.* at 1478 (quoting § 1920(2)). MASN contends that obtaining videotaped depositions and transcripts was duplicative and unnecessary, that the videotaped depositions had no independent use, and that they were not relied on by the district court in granting summary judgment. We have previously rejected such a narrow reading of the deposition expenses authorized under § 1920. *See In re Williams Sec. Litig.*, 558 F.3d at 1149. The district court found that the costs

7

associated with the depositions were reasonably necessary for the litigation, and we discern no abuse of its discretion.

## III. Conclusion

The judgment of the district court and the orders denying the motion to alter or amend the judgment and awarding costs are affirmed. MASN's unopposed motion for leave to file documents under seal is granted.

Entered for the Court


Timothy M. Tymkovich
Chief Judge

8